# GEORGIA NORTHERN RAILWAY COMPANY *v.* HUTCHINS & JENKINS.

1. If the defendant calls in question by demurrer the sufficiency of the petition, and the court renders a decision holding that the petition sets forth a cause of action, so long as this decision stands unreversed the defendant is precluded from calling in question the sufficiency of the petition by oral motion to dismiss.

2. A judgment on demurrer, until reversed, concludes the parties upon all questions necessarily involved in the decision of the points raised in the demurrer.

3. A bill of exceptions specified as a part of the record to be transmitted "the motion for new trial." *Held,* that it was the duty of the clerk to transmit the original motion for a new trial and all amendments thereto.

4. The charges complained of were not erroneous for any of the reasons assigned, and especially is this true as to those which related to the cause of action and the measure of damages, when they are construed in the light of the fact that the defendant was concluded, by the judgment on the demurrer, as to the right of the plaintiff to recover and the character of the damages which should be recovered.

5. Neither a ground of a motion for a new trial assigning error upon the admission of evidence nor a similar assignment of error in a bill of exceptions will be considered, unless the evidence is set forth in such a manner that the question of its admissibility can be decided without reference to other parts of the record.

6. The evidence authorized the verdict. No material error has been made to appear by any sufficient assignment of error, and the discretion of the trial judge in refusing to grant a new trial will not be controlled.

Argued January 25, — Decided February 13, 1904.

Action for breach of contract. Before Judge Covington. City court of Moultrie. July 6, 1903.

*W. M. Hammond, Little & Battle,* and *W. S. Humphreys,* for plaintiff in error. *Shipp & Kline* and *T. W. Mattox,* contra.

COBB, J. Hutchins & Jenkins brought suit in the city court of Moultrie against the Georgia Northern Railway Company, the allegations of their petition being in substance as follows : Defendant has injured and damaged plaintiffs in the sum of $12,500, by reason of the following facts : On January 3, 1900, defendant entered into a contract with the firm of McGehee & Company, whereby it agreed to extend, by January 3, 1901, its railroad to a point below the still of McNeill & Company, in said county, at which point is a sawmill of McGehee & Company. Said contract was, with the approval and consent of the defendant, transferred to plaintiffs by McGehee & Company on October 1, 1900, a copy of the contract and transfer being attached to the petition as an exhibit. At the date of the contract the defendant had already constructed a tramroad near the location of plaintiffs' mill and within one mile thereof, and had been using and operating such road for the purpose of hauling freight. This road was in use when the contract was made, and the defendant received and accepted all the benefits and rights under the contract. On October 1, 1900, plaintiffs purchased from McGehee & Company the location, plant, timber, and contract which they had obtained from the defendant, paying for the same the sum of $10,000, which was a fair price. Plaintiffs assumed and carried out all the obligations and duties owed by McGehee & Company to the defendant. They delivered to the defendant all of the lumber cut by them and by their mill, and defendant accepted the lumber and hauled the same and received from plaintiffs all freight

charges specified in the contract, and plaintiffs continued to deliver lumber and defendant to accept the freight charges until it moved its track as herein stated, and made it impossible to further carry out the contract.    Before making the purchase from McGehee & Company, plaintiffs saw in person the president of the defendant company, who assured plaintiffs that the contract would be carried out, and urged plaintiffs to buy the contract and have it transferred to them.    At the end of three months after the contract was transferred to plaintiffs, defendant tore up the track or line of road it had built to within half a mile of plaintiffs' mill, and since then has not had a track near plaintiffs over which it could haul lumber for them.    On account of defendant's having removed its tramroad, leaving plaintiffs seven miles from the nearest railroad station, plaintiffs were compelled to move their mill to a new location two miles nearer a railroad.    This was done at a cost of $1,000, made up as follows: 10 houses for employees at new location, $500; cost of moving mill and putting it down again, $300; cost of house for superintendent, $150; cost of barn and commissary, $50.    Since the removal of the tramroad plaintiffs have had to haul with teams the cut of their mill five miles in order to reach a railroad.    Plaintiffs hauled in this way 474,000 feet of lumber, at a cost of $1,422.    Owing to extra cost of hauling, plaintiffs were forced to abandon 200,000 feet of saw logs, which after being cut down could not profitably be sold.    By reason of inaccessibility to railroad these logs were a total loss, and were worth $600.    By reason of the extra cost for the long haul to railroad, plaintiffs could cut only the large trees into lumber, the smaller trees being a total loss.    On this account they sustained damage in the sum of $500.    By reason of the removal of the track and failure of defendant to carry out its contract, plaintiffs' sawmill location was damaged and depreciated in the sum of $7,500, this depreciation resulting from the fact that, on account of the extra cost of hauling to the railroad, the business could not be profitably operated.    Plaintiffs still have, of the timber leased as above stated, 1,400 acres that have not been cut, which will cut 5,600,000 feet, and to haul this timber to the railroad will cost $16,800, this extra cost being occasioned by the failure of the defendant to carry out its contract.

The contract referred to in the petition was attached thereto

as an exhibit, and is in substance as follows: " John F. Pidcock, President of the Georgia Northern Railway Co.," was " party of the first part," and McGehee & Company party of the second part. McGehee & Company obligated themselves to locate their saw-mill on the line of the Georgia Northern Railroad at McNeill's still, or somewhere near that point, and to give the " Georgia Northern Railway Company " the hauling of all the lumber made from the McNeill purchase and the timber they may buy adjoining or near by such timber, except certain specified timber. "And the said John F. Pidcock, president of the aforesaid, hereby agrees to build, construct, and equip a railroad to McNeill's still as early as practicable for the purpose of hauling said lumber." Also, to extend the railroad one mile beyond the still in a southernly direction, as McGehee & Company may desire, within twelve months from date, and to give that company freight rates on all lumber shipped from their mill. McGehee & Company were to pay certain freight rates and $2 per car for each car placed at their saw-mill for the purpose of moving the lumber. If McGehee & Company should fail to pay to McNeill & Company a certain note for $2,500 due them, the timber was to revert to the " Georgia Northern Railway Company, or its president, John F. Pidcock, who is responsible for the payment of said note." The contract was signed: " John F. Pidcock, Pres. Ga. Northern Railroad Co. E. J. McGehee & Co." Indorsed on the contract was an assignment by McGehee & Company to Hutchins & Jenkins of all right, title, and interest in the contract.

To this petition the defendant interposed a general demurrer on the grounds, that no sufficient facts were alleged to authorize a recovery against defendant; that the petition shows on its face that the defendant neither has nor ever had any contract relations with plaintiffs, nor was ever under any legal duty to plaintiffs to do any of the acts or things, the performance of which makes the pretended cause of action against it; that the damages claimed in the petition are remote and speculative and incapable of being recovered at law. The defendant also filed a special demurrer to several named paragraphs of the petition, amplifying and emphasizing the points raised in the general demurrer. These demurrers were overruled on July 17, 1902, after the petition had been amended; and exceptions pendente lite to this ruling were filed

The allegations of the defendant's answer were, in substance, as follows:    Defendant denies that it has damaged plaintiffs in any sum whatever.    Can neither admit nor deny that John F. Pidcock made or entered into the contract attached to the petition, but denies that the defendant ever made any such contract, and denies that the contract was transferred with its knowledge or consent. Avers that it did not remove the line of railway from the sawmill until the mill had ceased to supply sufficient lumber to enable it to retain such railroad.    Avers that the damages claimed in the petition are too remote and speculative to be the basis of a recovery, and that defendant is in no way responsible for such damage.

The case came on for trial on June 11, 1903, and resulted in a verdict for the plaintiffs for $7,500.    The defendant made a motion for a new trial, which was overruled.    It filed a bill of exceptions, assigning error upon the overruling of the motion for a new trial, and also upon certain rulings made at the trial, the bill of exceptions having been tendered and certified within the time allowed by law for this purpose.    On the same day that this bill of exceptions was certified the judge also certified another paper purporting to be a bill of exceptions, assigning error upon the exceptions pendente filed at the time of the judgment overruling the demurrers, but in this paper there was no assignment of error upon any ruling at the trial.    Both bills of exceptions were served and filed and transmitted to this court.    Before the case made by the bill of exceptions first above referred to was called, the plaintiff in error, by leave of the court, withdrew the bill of exceptions and record in the other case.   If this bill of exceptions had not been withdrawn, it would have been dismissed, for the reason that it did not contain an assignment of error on any ruling made at the trial.    See *Barge* v. *Robinson*, 115 *Ga.* 41.

1.    In the case now under consideration the bill of exceptions specified, as a part of the record to be transmitted to this court, the general and special demurrers of the defendant; and they were transmitted as a part of the record.    It did not appear what disposition had been made of these demurrers; and under the authority conferred upon this court by the Civil Code, § 5536 (4), the clerk of the trial court was required to certify and transmit a copy of any judgment that might appear to have been made on those demurrers, and in response to this order there was trans-

mitted to this court a certified copy of a judgment reciting that, an amendment having been allowed to the plaintiffs' petition, both the general and special demurrers were overruled, this judgment being dated July 17, 1902.    This part of the record was necessary to a proper determination of the assignment of error in the bill of exceptions which complained that the court erred in overruling, at the trial, an oral motion to dismiss the case because the petition failed to set forth any cause of action.    If the defendant had filed no demurrer to the petition, or had withdrawn the demurrers or failed to press the same, it had the undoubted right at the trial to make an oral motion to dismiss the case upon any ground which would be good in arrest of judgment.    Civil Code, § 5046; *McCook* v. *Crawford*, 114 *Ga.* 339, and cit.    But when the defendant, at the first term, filed demurrers both general and special, and pressed the same to a decision, and a judgment was rendered overruling the demurrers, the question arises as to how far this judgment is conclusive between the parties as to the right of the plaintiffs to recover upon the facts alleged.    It has been held that a judgment sustaining a general demurrer to a petition will bar a second suit for the same cause of action.    *Greene* v. *Central of Georgia Railway Company*, 112 *Ga.* 859, and cit.; *Satterfield* v. *Spier*, 114 *Ga.* 127 (3).    If a judgment on a demurrer that a petition sets forth no cause of action will conclude the plaintiff in another suit against the defendant, it would seem that upon similar principles a judgment upon a demurrer that a petition does set forth a cause of action will conclude the defendant in the same case, so long as such judgment stands unreversed. See, in this connection, *Kelly* v. *Strouse*, 116 *Ga.* 874 (7), 891 (7).    In the case just cited the following language appears: "If the defendant calls in question the sufficiency of the petition by demurrer, as he has a right to do, and the court renders an erroneous decision holding that the petition sets forth a cause of action, when in truth it does not, and the defendant acquiesces in this decision, of course no one will contend that, after the time allowed by law has expired for bringing under review this erroneous decision, the defendant can be heard to say that the petition sets forth no cause of action."    There was no error in overruling the motion to dismiss.    The judgment on demurrer is conclusive upon the question as to whether the petition sets forth a cause of action.

2. A judgment on demurrer, so long as it stands unreversed,. is conclusive on the parties as to all questions which were necessarily involved in the decision of the points raised by the demurrer. The demurrer in the present case not only raised in a general way the question as to the sufficiency of the plaintiffs' allegations to authorize a recovery, but it specifically raised the question that on the face of the petition there did not appear to be any contractual relation between the defendant and the plaintiffs which would authorize the plaintiffs to recover damages for the alleged wrongful acts committed by the defendant. The question was distinctly made by demurrer to the whole petition, as well as by demurrers to different paragraphs, that the damages claimed were too remote and speculative and incapable of computation, and generally of such a character as not to be the basis of a legal recovery. In other words, in passing upon the demurrers the court was compelled to decide two questions: (1) Have the plaintiffs alleged such a state of facts as to show that in law the defendant is liable in damages? And (2) Are the damages claimed of such a character as to be properly the subject of a legal recovery? The judgment overruling the demurrers decided these questions in favor of the plaintiffs, and this decision is the law of this case, whether right or wrong. A great part of the brief of counsel for the plaintiff in error is devoted to a discussion of the question as to whether the facts alleged are sufficient to constitute a cause of action, and whether the damages sought to be recovered are of such a character as to be the basis of a legal recovery. It is not proper for us to determine either of these questions, nor do we express or intimate any opinion in reference to the same, as they are concluded by the judgment on the demurrers.

3. The bill of exceptions specified as a part of the record "the motion for new trial." The clerk transmitted a motion for a new trial based upon the general grounds only. Before the call of the case counsel for the plaintiff in error filed a suggestion of a diminution of the record, in which it was set forth that there was in the court below an amendment to the motion for a new trial, which had not been transmitted. It may be that under authority of the Civil Code, § 5536 (4), this court would require such an amendment to be transmitted whenever it became apparent that

it was necessary to a proper determination of the case, even though the amendment was not in any way specified in the bill of exceptions.    But in any event a specification of "the motion for a new trial" includes the original motion and all amendments thereto.

4.   There are various assignments upon different parts of the charge.  In one complaint is made that the court charged the law of recoupment; but as it appears from the motion that this charge was made at the request of the defendant, of course it has no right to complain.    Complaint is also made that the court charged the jury that "the jury may also consider the number of witnesses, although not necessarily with the greater number." This charge is unintelligible, but reference to the charge which is contained in the record shows that the judge, in concluding his remarks upon what is meant by a preponderance of the evidence, used this language:   "The jury may also consider the number of witnesses, although the preponderance is not necessarily with the greater number." There was evidently a mistake in copying the charge excepted to in the motion for a new trial and bill of exceptions, the words "preponderance is" having been omitted after the word "although."    But treating the extract from the charge in the record as the one actually given, when the part of the charge referring to the subject of the preponderance of the evidence is considered as a whole there was nothing in the charge complained of to require the granting of a new trial.    The jury could not have been misled by it if they had been attentive to other parts of the charge.    The other portions of the charge which are alleged to be erroneous were not so for any of the reasons assigned, in the light of the fact that the judgment on the demurrers concludes the defendant, not only as to the right of the plaintiffs to recover, but also as to the elements of damage to be considered in determining the amount of the recovery, provided, of course, the allegations in reference to the cause of action and the damages sought to be recovered were established to the satisfaction of the jury by competent evidence.

5.   The third ground of the motion for a new trial was as follows:   "Because the court erred in admitting in evidence, over defendant's objection, that portion of E. J. McGehee's answer to direct interrogatory number five (5), in which the witness states

that the president, Mr. John F. Pidcock, was speaking for the company; defendant's objection being that said answer was irrelevant and the expression of a mere opinion or deduction of the witness." There is an assignment of error in substantially the same language in the bill of exceptions. Neither the assignment in the motion nor that in the bill of exceptions can be considered, for the reason that it does not appear what was the matter about which Pidcock was speaking. Reference is made to direct interrogatory number 5 for this purpose, but it is well settled that this court will not look beyond the motion for a new trial or the assignment of error in the bill of exceptions, as the case may be, to ascertain the facts necessary to pass intelligently upon the assignment. See *Seaboard Air-Line Railway* v. *Phillips,* 117 *Ga.* 98, 106, and cases cited. There are numerous other assignments of error upon rulings on evidence, which can not be considered, for the reason that the evidence objected to is not set forth; others, for the reason that it is not set forth with sufficient certainty; others, for the reason that the objection made to the admission of the evidence is not stated; and still others, for the reason that it does not appear that the objection set forth in the assignment of error was made at the time the evidence was offered.

6. Error is assigned in the motion for a new trial and in the bill of exceptions upon the admission in evidence of a written assignment or transfer signed by John F. Pidcock, President Georgia Northern Railway Company, of what was described as "the within and foregoing lease," etc. The objection made to this evidence was that it was irrelevant, did not have the corporate seal of the railway company, and there was no evidence that John F. Pidcock had authority from the railway company to execute the assignment. Neither in the bill of exceptions nor in the motion for a new trial is the paper assigned or the substance of it set forth. It is simply referred to in each instance as " the instrument of bargain and sale, etc., from N. McK. McNeill and T. I. McNeill to John F. Pidcock, President, etc." It is impossible to pass upon the assignment of error without having before us the paper to which the transfer relates; and as this is not embodied, either literally or in substance, either in the motion for a new trial or the bill of exceptions, the assignment of error will not be considered. After a careful consideration of all the assignments of

error relating to the admission of evidence, we find no error which would, in our opinion, require the granting of a new trial. Objection to the evidence introduced to prove the amount of damages was not well taken, for the reason that the plaintiffs simply proved the character of damages alleged in the petition, and the judgment on the demurrers concluded the defendant on the question as to whether these were the subject of a lawful recovery. After a careful examination of the entire record, we find no sufficient reason for reversing the judgment. The evidence authorized the verdict, and no material error having been committed, we will not interfere with the discretion of the trial judge in refusing to grant a new trial.

*Judgment affirmed.　　All the Justices concur, except Simmons, C. J., absent.*