## BROOKS *et al. v.* RAWLINGS.

Where a demurrer was filed to an equitable petition seeking the reforma-
tion of a deed to land because of alleged fraud in its procurement,
which demurrer was overruled, but no exception was taken to this judg-
ment, and the plaintiff offered evidence substantially proving the case
as laid in the petition, it was reversible error for the court, at the
conclusion of the plaintiff's evidence, to grant a nonsuit.

JUNE 13, 1912.

Equitable petition. Before Judge Walker. Washington superior court. March 10, 1911.

Isabella J. Brooks, Ella Nora Brooks, and Leon Brooks filed their petition against Charles G. Rawlings, and alleged as follows: They were owners, as tenants in common, of two tracts of land. They owed money to various persons, including the defendant, and were being sued by some of their creditors. They appealed to the defendant for a loan sufficient to pay off their debts. He agreed to make the loan, but informed plaintiffs that it would be necessary for them to execute and deliver to him an absolute deed to the lands before he would be authorized to take possession, rent the lands, collect the rents, and apply the proceeds arising from the sale of such rents to the payment of the money which he was going to advance to them to pay off and discharge their several debts hereinbefore referred to. He declared he would not be able to rent the lands without such absolute deed. He proposed to hold said lands until the rents had fully paid the loan, and then would surrender possession of the land to them. He also agreed that they should have the right to pay him up at any time, with eight per cent. interest. He proposed to prepare the necessary papers to evidence and carry out the above-stated contract between them. He professed great friendship for the plaintiffs on account of his friendship for their father, and said that he would treat them fairly and properly in the matter. They accepted his proposition and agreed to the foregoing terms; they were unlearned in legal matters, acted without the advice of counsel or others skilled in such matters, and left to Rawlings the preparation of the necessary papers to carry out their contract. They believed he was their friend, and did not believe he was seeking any advantage of them. On February 21, 1908, he had them to execute and deliver to him an absolute deed to said lands; and they permitted their tenants to attorn to Rawlings. At this time they had already rented the lands for 1908 for eight bales of cotton. In the fall of 1908 Rawlings collected these rents of the value of $400. He received the rents for 1909 of the value of $500, and will receive the rents for 1910 of the same value. At the time they made their deed the lands were worth $3,000—much more than the money borrowed from Rawlings. Their deed purports to be upon a consideration of $1,861, but Rawlings paid out for them only $972.92, besides

some interest. After getting said deed from them, and after having gotten possession of the land, Rawlings began to assert that he bought said lands from them, and he now asserts that he is the absolute owner thereof. He procured said deed from them fraudulently, by taking advantage of their ignorance and of the confidence reposed in him by them, and by pretending that it was necessary for him to have an absolute deed and possession of said lands in order that he might be able to rent them out, receive the rents, and apply the same to the payment of the money which he would advance to pay off their debts. It was his intention and scheme to get an absolute deed from them, and have them surrender possession of the lands to him, that he might wrongfully and fraudulently assert that he was the absolute owner of said property. As soon as they discovered that he claimed to be the owner of said lands, they offered to pay him back all the money he had paid out for them on their debts, to him and to other creditors, and redeem said lands. They asked Rawlings to come to an accounting with them for the rents he had received. This he refused to do, asserting that he was the owner of said lands and that they had no title to or interest therein. They offered to tender to Rawlings whatever amount might be due him on an accounting. The deed to Rawlings does not speak the real contract. Said deed was only made for the purpose of securing him for the money advanced to them, and to permit him to collect the rents and apply the same to the discharge of their indebtedness, etc. They prayed, that the deed be declared to be simply a security deed, and that the same be so reformed as to speak the true contract and agreement between them and Rawlings; that an accounting be had between them; that the amount of money advanced by Rawlings for them be ascertained; that the amount of rents received by him be fixed; and that they be permitted to redeem said lands.

The defendant demurred to this petition. The demurrer was overruled, but no exception was taken to this judgment. The defendant answered, denying the material allegations of the petition, and also the right of the plaintiffs to make a tender. Plaintiffs introduced testimony which supported their petition substantially as laid. · At the conclusion thereof the defendant moved for a nonsuit. The court sustained the motion, and the plaintiffs excepted.

*Hines & Jordan,* for plaintiffs.

*Hardwick & Wright,* for defendant.

HILL, J. (After stating the foregoing facts.) To the judgment of the court overruling the demurrer to the petition in this case no exception was taken. It was, therefore, a conclusive determination that a right of action existed in favor of the plaintiffs, and they, subsequently to the overruling of the demurrer, having substantially proved their case as laid, were entitled to recover. The grant of a nonsuit was therefore reversible error. In the case of *Sims* v. *Georgia Railway & Electric Co.,* 123 *Ga.* 643 (51 S. E. 573), it is said: "The right of the plaintiff to recover upon proof of the allegations made in his petition was adjudicated favorably to him by the judgment overruling the demurrer. 'Until duly set aside, that decision is conclusive, and the question thereby settled is to be regarded as res adjudicata.' *Hollis* v. *Nelms,* 115 *Ga.* 7 [41 S. E. 263]. In this judgment the defendant company acquiesced, neither filing exceptions pendente lite nor bringing it under review by a direct bill of exceptions to this court. On the trial of the case, therefore, the only question for determination was the amount of the damages suffered by the plaintiff, in the event he sustained by proof the allegations of fact on which he based his right of recovery. *Richmond Hosiery Mills* v. *W. U. Tel. Co.,* 123 *Ga.* 216 [51 S. E. 290]. The defendant company was precluded from calling into question the right of the plaintiff to recover upon such proof being made. *Ga. Northern Ry. Co.* v. *Hutchins,* 119 *Ga.* 504 [46 S. E. 659]. As was remarked by Mr. Justice Cobb in *Kelly* v. *Strouse,* 116 *Ga.* 891-892 [43 S. E. 288], 'If the defendant calls in question the sufficiency of the petition by demurrer, as he has a right to do, and the court renders an erroneous decision holding that the petition sets forth a cause of action, when in truth it does not, and the defendant acquiesces in this decision, of course no one will contend that, after the time allowed by law has expired for bringing under review this erroneous decision, the defendant can be heard to say that the petition sets forth no cause of action.' When a case is in limine, the trial judge may of his own motion interpose to prevent a miscarriage of justice, provided 'there is no estoppel of which either party may take advantage.' Ibid. 874. But it is not within the power of the trial judge to give to either party the benefit of a contention

which he is himself estopped to urge." Under the ruling just quoted, we think the court erred in granting the nonsuit in the present case.    *Judgment reversed. All the justices concur.*