## HIXON v. HINKLE.

1. The general demurrer to the petition in this case having been overruled by the trial court and this judgment having been affirmed by this court, both courts holding that the petition set forth a cause of action, the trial court erred on the subsequent trial of the case in granting a nonsuit when the plaintiff had substantially proved his case as laid, nothing appearing from such proof to traverse or avoid the case as set out in the petition.

2. Where one is induced to make a loan of money to borrowers who are the president and secretary of a corporation, upon their representation that they are the owners of a large number of shares of stock in such corporation, and upon their agreement to pledge a given number of such shares as collateral security for the loan, and where the borrowers execute to the lender their note for the money borrowed, and procure and have issued to the lender the number of shares which they agree to put up as collateral security for the loan, and where the lender afterward discovers that the borrowers are not the owners of the shares in such company which they have represented that they owned and that the shares which they have pledged as such collateral security are those of another for whom they were acting as agents in selling the same and to whom the proceeds of the loan were turned over by the borrowers, the owner of such shares being cognizant of and a party to the transaction in which said loan was made, such misrepresentation by the borrowers and pledge of stock which they did not own, to secure such loan, constituted a fraud against the lender, their financial worth being less than that held out by them to the lender; and on discovering the fraud the lender could follow the money lent or its equivalent into the hands of the borrowers or into those of one to whom the proceeds of such loan were delivered, the latter aiding in the commission of the fraud perpetrated upon the lender by the borrowers, and ratifying the transaction of the borrowers in securing such loan by receiving and keeping the fruits and benefits thereof.

3. Where a contract is procured by fraud, parol evidence is admissible to prove the fraud; and if the fraud be proved, the jury would be authorized to set aside the contract. The purpose of such evidence is not to add to, take from, or vary the terms of a valid, written agreement, but to show that the contract was originally void because of the fraud perpetrated upon the complaining party.

No. 3589. July 16, 1923. Rehearing denied September 11, 1923.

Equitable petition. Before Judge M. D. Jones. Bibb superior court. November 27, 1922.

J. A. Hixon brought his equitable petition in Bibb superior court against A. B. Hinkle; and alleged the following case: On Oct. 11, 1920, the defendant was in possession of ten United States liberty bonds, Nos. 29647-29656, of the value of $10,000, the title to which was and is in petitioner. On said date he made demand

on defendant for said bonds, which he refused, and still refuses to deliver to petitioner. The annual interest on said bonds amounted to $425. They were registered in his name in the U. S. Treasury Department. The defendant, on or about the above date, forwarded said bonds to said treasury department with the request that registration thereof in petitioner's name be canceled and that coupon bonds for a like amount be issued to him instead. On or about Oct. 20, 1920, petitioner filed his caveat with said treasury department, objecting to the cancellation of said bonds and issue of coupon bonds to defendant. Said bonds, since the filing of said caveat, have been in the possession of said treasury department, awaiting final adjudication in the proper forum of the right and title thereto as between him and defendant. He is advised and charges that defendant claims title to said bonds under an assignment from him to the Mobile Tractor Co. on Sept. 29, 1920, and an assignment thereof by the 'Mobile Tractor Co. to defendant in October, 1920. Both of said assignments are absolutely void for the reasons which will now be stated. There was no consideration for said transfer to the Mobile Tractor Co. He owed said company nothing, and had never contracted to assign said bonds to it, and there have never been any contractual relations between him and said company. The transfer of said bonds from him to said company was obtained by fraud. At the date of said assignment, F. J. Ryan was its president, Arthur L. Herbert its treasurer, W. C. Kimbell its Georgia agent, W. V. Gilbert one of its stock salesmen, and said Hinkle a stockholder therein. Said parties, between April 15 and September 29, 1920, at various times made strenuous efforts to sell him some of the corporate stock in said company, but he refused to buy. Said company was capitalized at $1,000,000, divided into shares of the par value of $100, until April 15, 1920, when said shares were raised to $150. Said Ryan and Herbert represented that they were the bona fide owners of 999 shares of the capital stock of said company in their own right, besides other fractional blocks of said stock which they had taken back from purchasers who failed to pay therefor, and had paid for such blocks and taken the stock instead of turning it back to the company. After he had declined to purchase any stock, he subsequently agreed with said Ryan and Herbert to make them a joint loan of $20,000 to be secured by 200 shares of stock of said

company as collateral. A copy of this agreement in the shape of a note was attached to the petition, dated Sept. 14, 1920; and by it said Ryan and Herbert promised to pay on Dec. 25, 1921, to J. A. Hixon or order $20,000, with interest from date at 6 per cent. per annum. The note stipulates that "as collateral security to the foregoing obligation the makers hereof have procured, caused to be issued in the name of J. A. Hixon, and delivered to the said J. A. Hixon, two hundred (200) shares of the·capital stock of the Mobile Tractor Company, . . the legal title to said stock to vest in said J. A. Hixon as collateral security, . . the equitable title to said stock to be held by said J. A. Hixon in trust for the makers hereof; said makers constituting and appointing said J. A. Hixon their attorney in fact to exercise for them, during the existence of this contract, all the rights and privileges of a stockholder in said Mobile Tractor Company, and to receive all issues, premiums and dividends accruing on said stock and apply the same as a credit on this obligation. And in consideration of the sum of five ($5.00) dollars to the makers hereof in hand paid, . . and for other good and valuable consideration, the makers hereof grant . . to said J. A. Hixon the right, privilege, and option, at his election at any time from the date hereof to the maturity of this contract, . . to purchase absolutely said two hundred (200) shares of stock at and for the sum due on this obligation at the time of the exercise of said option and privilege by·said J. A. Hixon, said purchase to be paid by said J. A. Hixon by the surrender by him of this obligation, marked 'fully satisfied.'"

It was agreed that $15,000 of said loan was to be made to said payees in liberty bonds at par and the balance to be managed otherwise. Said $15,000 of bonds were delivered to the payees of said contract for the purpose of preparing the assignments of said bonds, and calculating the accrued interest; petitioner relying upon them to prepare said transfers in accordance with the terms of said written contract. When said assignments were prepared they were presented to him while at his desk absorbed in other matters, and he signed the same at their request. Said assignments were fraudulently prepared by said payees and their agents to the Mobile Tractor Co., without his knowledge or consent, and were inadvertently signed by him. When said payees of said written contract procured said bonds they, without his knowledge

or consent, attached his signature to a regular blank application for the purchase of stock in said company, and had the stock of said company issued to him instead of the stock of said Ryan and Herbert as contracted for. At the time of the delivery of this stock to him, he did not know, and had no way of knowing, that it was the company's stock. By reason of the fact that Ryan was president and Herbert was treasurer of said company, they were enabled to practice this deceit and fraud upon him, and to change his contract with them into an absolute purchase of stock of said company at just half of its market value and selling price at the time, and deliver to him stock of said company instead of stock owned by said Ryan and Herbert. In a few days thereafter he discovered what had been done; and being unwilling to ratify such a fraud upon the other stockholders of said company by purchasing in this manner stock at half price in said company, he promptly notified the company to return said bonds, that he had not intended to transfer any bonds, owed it nothing, and had bought nothing from it. Said company had forwarded to him a receipt in full payment of said stock, to which he responded promptly, and demanded the return of his bonds, and the company promised to do so, but failed to do so to date, and to this extent ratifies the fraud perpetrated upon him and the other stockholders of said company. All of the original capital stock of the company, except 500 shares, had been sold prior to April 15, 1920, and about this time, by the corporate action of the company, the price of said stock was raised to $150 per share. After the price was so raised defendant purchased the remaining 500 shares of its capital stock at $100 per share, notwithstanding the fact that the price had been raised, making said wrongful and illegal purchase through said president, treasurer, and State agent for Georgia, paying therefor $22,000 or other large sum in cash and executing his written obligation for $28,000 or other large sum. After making this purchase, defendant wrongfully and illegally contracted with the company to resell said 500 shares at the sum of $150 per share, the defendant agreeing to give to said officers the sum of $25 per share for making said sale, and said officers contracted in the name of the company to pay defendant a forfeit of some $5000 if it failed to resell said stock within a given time agreed on. Ryan, Herbert, and the defendant conspired and further agreed they would use the agents

of said company to effect said sale for the defendant. It was further agreed between said officers and the defendant that no stock should be issued to defendant under said purchase of 500 shares, except as the same were sold in the State of Georgia, and until the whole 500 shares were sold, and that said officers should receive $25 per share out of the proceeds and the defendant a like amount.

When this illegal agreement was consummated, the defendant, and Herbert, Ryan, and Kimbell as State agent, as the duly authorized agents of the defendant, illegally and fraudulently confederated and agreed to sell him said stock or a portion thereof, which fact was unknown to him; and it was agreed between them that in no event would they advise or inform him they were selling stock so purchased by the defendant. It was further agreed that he should have full information before deciding whether he would avail himself of this option, and the right of an audit to ascertain if the affairs of said company were straight, to be furnished information as to the cost of production, it being represented that said company would be in full production of tractors within twenty days from date of said agreement. In a few days thereafter he discovered that as soon as said bonds had been received by Herbert, Ryan, and Kimbell they immediately caused to be signed his name, fraudulently and without his knowledge and consent, to an application for 200 shares of stock in said company and filed the same with the company and had 200 shares issued to him of said stock so bargained by said company to defendant. As soon as he discovered said fraudulent practice he repudiated it and demanded return of his bonds. Said officers agreed to do so, but instead they assigned and turned them over to the defendant, endeavoring to lull him into inaction by their repeated promises to return them to him. Prior to the commencement of this action, the defendant had converted $3000 of said bonds to his own use. In said fraudulent transaction the company, Ryan, Herbert, and Kimbell were the agents of the defendant who received the fruits thereof. By reason of said facts defendant obtained no title to any of said bonds, and petitioner prays judgment against defendant for the value of said described bonds, with interest thereon; that said transfer be decreed to be void; and that title thereto be decreed in him.

The trial judge overruled a general demurrer to the petition, on

the ground that it set forth no cause of action. This court affirmed that judgment, holding that a good cause of action was alleged in the petition. *Hinkle* v. *Hixon,* 154 *Ga.* 193 (113 S. E. 805). Thereafter, on the trial of the case, the plaintiff introduced evidence substantially proving his case as alleged in his petition. At the conclusion of the plaintiff's evidence the trial judge granted a nonsuit, and the plaintiff excepted.

*E. W. Maynard,* for plaintiff.

*Jones, Park & Johnston,* for defendant.

HINES, J. (After stating the foregoing facts.)

1. The grant of a nonsuit was error, and requires a reversal of the judgment. *Brooks* v. *Rawlings,* 138 *Ga.* 310 (75 S. E. 157); *Pierpont Mfg. Co.* v. *Savannah,* 153 *Ga.* 455 (112 S. E. 462).

The defendant is now estopped by the judgment of this court from asserting, that the plaintiff is not entitled to recover, if the latter proves his case as laid in his complaint, in the absence of evidence traversing or avoiding the case made by plaintiff in his petition. When this case was here before, this court, in effect, held that the plaintiff was induced to make a loan to Ryan and Herbert by a fraud perpetrated upon him by them, this fraud consisting in their false representation that they were the owners of 999 shares of the capital stock of the Mobile Tractor Co., of which they agreed to pledge 200 shares as collateral security for this loan, when in fact they did not own said number of shares in said company, and when in fact the 200 shares pledged by them to secure said loan were shares which the defendant had agreed to buy and which these borrowers had agreed to sell for him on commission; and that upon the discovery of this fraud the plaintiff would be authorized to repudiate the transaction, and recover from the defendant the bonds delivered to these borrowers in lieu of money, the defendant being chargeable with this fraud, if not from active participation therein, from having received the spoils and fruits of the fraudulent transaction. Civil Code (1910), §§ 4410, 4623, 3591, 3593; *Lewis* v. *Equitable Mortgage Co., 94 Ga.* 572 (21 S. E. 224).

2. The trial judge based his judgment of nonsuit upon the ground that the plaintiff was to have 200 shares of the stock of the tractor company as collateral security for his loan, that he got this number of shares, and that therefore he can not complain.

Plaintiff was not to have any 200 shares of the stock of this company. He was to have that number of the 999 shares which the borrowers represented they owned in this company. The financial worth and responsibility of borrowers who are able to own 999 shares of the capital stock of a corporation is much greater than that of those who own no stock in such company and are borrowing to invest in such shares. Their financial standing would be appreciably less if the money they were borrowing was to go to a third person to pay for stock of the company for which such third person had subscribed. If the plaintiff had gotten the stock of the borrowers, their financial worth would be the value of such stock plus the amount of the loan. Besides, the value of the stock, if owned by the borrowers, who are officers of the company, would be greater as they would have a greater incentive to so manage the affairs of the company as to make it a success. It follows that the plaintiff did not get what he contracted for by way of security; and the borrowers did not possess the wealth and financial standing which they represented to the plaintiff that they enjoyed.

3. It is well settled and beyond doubt, that where a contract is procured by fraud, parol evidence is admissible to prove the fraud; and if the fraud be proved, the jury are authorized to set aside the contract. *Ham* v. *Parkerson,* 68 *Ga.* 830. The purpose of such evidence is not to add to, take from, or vary the terms of a valid written agreement, but its object is to show that the contract was originally void because of the fraud perpetrated upon the complaining party. This can always be shown by parol. Civil Code (1910), § 5790. The contrary contention is a mere cavil.

But all these matters were considered and passed upon when the case was here before.

*Judgment reversed. All the Justices concur.*

BECK, P. J. I concur specially in the judgment of reversal in this case because of the ruling made in the same case when it was here before by a majority of the court, which decision became the law of the case.