In re UNIVERSAL PROFILE,
INC., Debtor.

UNIVERSAL PROFILE, INC., Plaintiff,

v.

ATLANTA FEDERAL SAVINGS AND LOAN ASSOCIATION, E. John Hosch, Rex Baker, Jesse Jordan, Elizabeth Ann Ekern f/k/a Elizabeth Ann Kandell, Universal Profile Trust and John L. Westmoreland, Jr., Defendants.

Bankruptcy No. 80–00358A.
Adv. No. 80–0222A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Sept. 23, 1980.

See also, Bkrtcy., 5 B.R. 572; Bkrtcy., 6 B.R. 190; Bkrtcy., 6 B.R. 194.

William G. McDaniel and Alan L. Dye, McDaniel, Chorey & Taylor, Atlanta, Ga., for UPI.

Joseph F. Page and Robin N. Loeb, Garland, Nuckolls, Kadish, Martin & Catts, P. C., Atlanta, Ga., for Elizabeth Ann Ekern.

## ORDER

HUGH ROBINSON, Bankruptcy Judge.

A motion for summary judgment filed by plaintiff Universal Profile, Inc. brought this matter before the Court. Having considered the briefs and other documents submitted by the parties regarding this motion and the pleadings on file, the Court makes the following entry:

## FINDINGS OF FACT

1. Karl A. Kandell, (hereinafter referred to as "Kandell") is the sole director, officer and shareholder of Universal Profile, Inc., (hereinafter referred to as "UPI"), the debtor herein.

2. At one time Kandell was married to Elizabeth Ann Ekern, (hereinafter referred to as "Ekern") who is a party defendant and third party plaintiff in this adversary proceeding.

3. While married, Kandell and Ekern resided in a house which is the subject matter of the instant adversary proceeding.

4. On May 30, 1979 Kandell and Ekern entered into a settlement agreement the provisions of which settled their rights with regard to their property, alimony, child custody, child support and related matters.

5. This settlement agreement is a sealed instrument.

6. Paragraph 2 of the settlement agreement provides as follows:

"Wife shall have the right to continue to reside at the residence at 2535 Johnson Ferry Road, Marietta, Georgia, until said residence is sold. It is agreed that said residence shall be sold as soon as practicable at such price and upon such terms as the parties agree upon. Until said house and residence is sold, Husband shall pay the house note, taxes, insurance, utilities, and all other expenses in connection with the operation of said house and residence. Upon the sale of said residence, after payment of the first loan in the approximate amount of $90,000.00, real estate commission, and closing costs, the net proceeds shall be divided equally between Wife and Husband. Any subsequent loans placed on said property by Husband shall be paid out of the sale of the proceeds going to the Husband."

7. The settlement agreement does not mention UPI, nor does UPI's name appear on the signature line of the settlement agreement.

8. By entering into the settlement agreement Kandell intended to be bound by the terms and provisions thereof.

9. At the time this settlement agreement was entered into title to the residential estate located at 2535 Johnson Ferry Road was in UPI.

10. UPI acquired title to the subject real property from Universal Profile Trust on or about May 18, 1977.

11. On February 5, 1980 UPI filed a voluntary petition for bankruptcy under chapter 11 of title 11 of the United States Code.

12. The present adversary proceeding was instituted by UPI's complaint to sell the subject real property free and clear of liens.

13. Ekern claims an interest in the real property UPI seeks to sell by virtue of the settlement agreement entered into by Ekern and Kandell.

14. UPI filed a motion for summary judgment with respect to Ekern's claims to the subject real property on June 27, 1980. It is UPI's contention that Ekern has no interest in the property sought to be sold for the reason that UPI is not bound by the settlement agreement executed by Kandell and Ekern.

15. Ekern has asserted the following theories of liability in her response to UPI's motion for summary judgment:

(a) UPI is the alter–ego of Kandell and therefore Kandell's signature on the settlement agreement is sufficient to bind UPI.

(b) At the time Kandell signed the settlement agreement he was acting as agent for UPI and UPI thus became bound by its provisions.

(c) UPI ratified the agreement.

## APPLICABLE LAW

### PAROL EVIDENCE RULE

Ekern alleges that Kandell signed the settlement agreement as agent for UPI and therefore UPI is bound by its provisions. The only signatures which appear on the settlement agreement are those of Ekern and Kandell. Nowhere in this agreement is UPI mentioned. For this reason UPI contends that Ekern is barred by the parol evidence rule from asserting that Kandell signed the settlement agreement as agent for UPI.

The parol evidence rule serves to bar the admission of parol evidence to add to, take from or vary a written contract. *Roberts v. Investors Savings Company*, 154 Ga. 45, 113 S.E. 398 (1922). However there are exceptions to this rule. The circumstances surrounding the execution of a contract are proper subjects of proof by parol evidence. Ga.Code Ann. § 20–704(1); *Irwin v. Young*, 212 Ga. 1, 90 S.E.2d 22 (1955). If a written contract contains either latent or patent ambiguities parol evidence is admissible for explanatory purposes. Ga.Code Ann. § 20–704(1); *Brigadier Industries v. Pippin*, 146 Ga.App. 705, 247 S.E.2d 170 (1978); *Andrews v. Bickerstaff*, 93 Ga.App. 571, 92 S.E.2d 257 (1956). Where it appears from the face of the contract or the attendant circumstances that the contract is incomplete parol evidence is admissible to prove collateral agreements which do not in any way conflict with what is contained in the writing. *Brosseau v. Jacobs' Pharmacy Company*, 147 Ga. 185, 93 S.E. 293 (1917).

The Georgia courts have consistently held that parol evidence is not admissible to show that a person signed a written contract under seal as agent unless the contract purports upon its face to be the contract of the principal. *Brega v. CSRA Realty Company*, 223 Ga. 724, 157 S.E.2d 738 (1967); *Carr v. Louisville & Nashville Railroad Company*, 141 Ga. 219, 80 S.E. 716 (1913); *Bowers v. Salitan*, 97 Ga.App. 877, 104 S.E.2d 667 (1958); *Byers v. Harper*, 64 Ga.App. 404, 13 S.E.2d 389 (1941).

The settlement agreement involved herein is a sealed instrument. There is no suggestion in the provisions thereof that it is the contract of any party other than Kandell and Ekern. Under these circumstances it would seem that the parol evidence rule would bar the introduction of evidence to prove that UPI was a party to the contract. However, Ekern vigorously argues that the parol evidence rule is inapplicable here.

Ekern argues that the parol evidence rule does not apply to the instant situation for the reason that Kandell's status as agent for UPI rather than representations he made contemporaneously with the execution of the contract is the matter being asserted. This Court agrees that the parol evidence rule does not bar the admission of evidence to prove Kandell's status as an agent for UPI. But that is not the problem here. The problem presented here is whether parol evidence is admissible to prove that Kandell was acting in his capacity as agent for UPI at the time the settlement agreement between Ekern and Kandell was executed. The Court is inclined to believe that such evidence would be barred by the parol evidence rule.

Ekern next argues that the circumstances surrounding the execution of a contract are always proper subjects of proof to aid the construction of contracts.

According to Ekern the evidence will establish the following scenario. The settlement agreement was executed for the purpose of allocating the real and personal properties of Ekern and Kandell. Ekern entered into the agreement with the understanding that she would receive one half of the net proceeds from the sale of the marital residence. Kandell signed the agreement for himself and on behalf of UPI, and both parties intended to be bound by its terms. It is argued that this evidence will reveal a latent ambiguity in the agreement as to the capacity in which Kandell signed the instrument, and consequently parol evidence will be admissible to explain this ambiguity.

As authority for this proposition Ekern relies on *Tolbert v. Short*, 150 Ga. 413, 104 S.E. 245 (1920). This case involved a contract to sell land. A suit was brought by the purchaser for specific performance of the contract. The seller claimed that because there were two tracts of land that met the description of the land in the deed, the contract was too vague for enforcement. It was held that there was a latent ambiguity, and therefore parol evidence was admissible to explain this ambiguity.

Ekern argues that the instant case is analogous to the *Tolbert* case in that there is a latent ambiguity concerning whether Kandell signed the settlement agreement as an individual or as an agent for UPI. The Court does not agree. This settlement agreement determines the rights of two people who were formerly married. Not only does the agreement provide for the division of real property and the personal belongings of the parties, it provides for such things as permanent alimony, child custody and child support. One does not expect a corporation to be a party to a contract of this kind. This Court finds no latent ambiguity in the settlement agreement. Where the terms of a contract are clear parol evidence will not be allowed to raise an ambiguity for the purpose of proving that the contract was different from that expressed in the writing. *Brosseau v. Jacobs' Pharmacy Company, supra.*

Ekern's final argument is that parol evidence is admissible to vary a contract where fraud exists. Parol evidence is admissible to prove that a person was fraudulently induced to enter into a contract. *Gilleland v. Welch*, 199 Ga. 341, 34 S.E.2d 517 (1945); *Williams v. Southland Corporation*, 143 Ga.App. 111, 237 S.E.2d 639 (1977); *Kimbrough v. Adams*, 65 Ga.App. 536, 16 S.E.2d 96 (1941). Evidence dehors the contract is admissible in a situation where fraud is involved because the purpose of the evidence is not to vary the terms of the contract, rather, it is to show its invalidity. *Hixon v. Hinkle*, 156 Ga. 341, 118 S.E. 874 (1923); *Chicago Building and Manufacturing Company v. Butler*, 139 Ga. 816, 78 S.E. 244 (1913); *Loyless v. Hesse Envelope & Lithographing Co.*, 10 Ga.App. 660, 74 S.E. 90 (1912).

This exception to the parol evidence rule does not help Ekern. She is not seeking to prove that the settlement agreement is void; she is trying to enforce her rights under this document. The Court concludes that parol evidence is not admissible under the fraud exception for the purpose of proving that UPI is bound by the settlement agreement.

Because the settlement agreement is a sealed contract which is clear and unambiguous and complete on its face, Ekern is barred by the parol evidence rule from introducing evidence dehors the contract for the purpose of showing that Kandell signed the agreement as agent for UPI. This Court concludes that there is no genuine issue of material fact concerning the capacity in which Kandell signed the settlement agreement. The agreement was signed by Kandell as an individual.

PIERCING THE CORPORATE VEIL

Ekern contends that UPI is the alter ego of Kandell. This state of affairs allegedly resulted from the commingling of the property of Kandell and UPI and Kandell's confusion of his ability to transact his own business with his ability to control UPI's assets. It is argued that this Court should ignore the corporate entity and hold UPI liable for the provisions of Paragraph 2 of the settlement agreement.

A corporation and its owners are separate and distinct legal entities. *Byrd v. Brand*, 140 Ga.App. 135, 230 S.E.2d 113 (1976). However the corporate entity may be disregarded upon equitable principles when the corporation is a mere alter ego or business conduit of an individual. *Jones v. Cranman's Sporting Goods*, 142 Ga.App. 838, 237 S.E.2d 402 (1977). Under the alter ego theory the corporate veil is pierced when there is such unity of interest and ownership that the separate personalities of a corporation and its owners no longer exist and to adhere to the doctrine of the corporate entity would promote injustice or protect fraud. *Farmer's Warehouse of Pelham, Inc. v. Collins*, 220 Ga. 141, 137 S.E.2d 619 (1964).

"[W]hen the corporate fiction is a mere simulacrum, an alter ego or business conduit of an individual, it may be disregarded in the interest of securing a just determination of the action."

*Mayo v. Pioneer Bank & Trust Company*, 274 F.2d 320, 321 (5th Cir. 1960) cert. denied 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960).

When a corporate entity is disregarded, the person or corporation in control of the subservient corporation is held liable for the acts or omissions of the subservient corporation. *Condenser Service & Engineering Company, Inc. v. Brunswick Port Authority*, 87 Ga.App. 469, 74 S.E.2d 398 (1953). In this case Ekern is seeking to hold a corporation liable for the act of an individual. The issue of whether a corporation may be held liable for the acts of an individual under the doctrine of piercing the corporate veil is not presently before this Court. At this time the Court must restrict its inquiry to the issue of whether there are any genuine issues of material fact in this case.

Ekern alleges that Kandell commingled his assets with those of UPI. In support of this allegation Ekern asserts that UPI holds title to the property which is the subject matter of this dispute, yet the property was occupied rent–free by Kandell and Ekern during their marriage, and they assumed responsibilities for the insurance and property taxes. It is also alleged that when Kandell obtained additional mortgages on the property he supplied the subsequent obligees with copies of the settlement agreement and informed them that only his interest in the property would collateralize the loan. Ekern further asserts that potential purchasers of the subject real property were informed by Kandell of the provisions of Paragraph 2 of the settlement agreement. As further evidence that UPI is the alter ego of Kandell, Ekern maintains that Kandell applied the funds obtained by mortgaging the property to both personal and corporate purposes.

Ekern's assertion that UPI is Kandell's alter ego is vehemently denied by UPI. UPI contends that its status as a separate entity has always been observed by Kandell. Kandell allegedly treats UPI's assets as separate from his own and maintains separate books and finances for himself and UPI.

This Court is of the opinion that Ekern is not prohibited by the parol evi-

dence rule from attempting to prove that UPI is the alter ego of Kandell. This rule of evidence is not applicable in this instance because the evidence introduced would not be for the purpose of varying the terms of the settlement agreement; it would be for the purpose of establishing liability on equitable principles. The Court would be determining whether there is such an intermingling of the identities of UPI and Kandell that equity requires UPI to be responsible for Kandell's act of granting Ekern an interest in property to which UPI holds title.

▆ The Court finds that there are genuine issues of material fact concerning whether UPI is the alter ego of Kandell.

## RATIFICATION

Ekern argues that if the corporate entity is not disregarded and if it is found that Kandell did not sign the settlement agreement as agent for UPI, then the Court should find that UPI ratified the settlement argument. According to Ekern, UPI had knowledge of the provisions of the settlement agreement and therefore knew that Kandell attempted to convey an interest in property to which UPI held title. UPI's alleged failure to repudiate the settlement agreement is viewed by Ekern as a ratification of this conveyance.

▆ This argument may be disposed of with dispatch. An act cannot be subject to ratification unless it was done for and on behalf of the person attempting to ratify it. *Smith v. Pope*, 100 Ga.App. 369, 111 S.E.2d 155 (1959); *Federal Deposit Insurance Corporation v. Thompson*, 54 Ga.App. 611, 188 S.E. 737 (1936). This Court has concluded as a matter of law that Kandell executed the settlement agreement in his individual capacity and not as agent for UPI. Because the execution of the settlement agreement was not an act done for or on behalf of UPI, this Court determines as a matter of law that UPI could not have ratified this agreement.

## CONVEYANCE OF CORPORATE PROPERTY BY CORPORATE OFFICER

UPI asserts the argument that even if this Court finds that UPI is bound by the settlement agreement, UPI need not perform in accordance with its terms for the reason that the agreement serves no valid corporate purpose. The enforcement of the provisions of Paragraph 2 of the settlement argument will allegedly defraud UPI's creditors.

UPI relies on Ga.Code Ann. § 22–714 in asserting these arguments. Under this statute a director or officer may be enjoined from making an unlawful transfer of corporate property. Ga.Code Ann. § 22–714(a)(2). When an unlawful transfer of corporate property has occurred, it may be set aside if the transferee is made a party to the action against the officer or director, and if it can be shown that the transferee knew of the unlawfulness of the transfer. Ga.Code Ann. § 22–714(a)(3).

Ekern contends that the disputed transfer does, in fact, serve a corporate purpose. It is alleged that because a great portion of Kandell's assets were tied up in UPI, Kandell's obligations to Ekern would have necessarily had to be satisfied from corporate funds and property. Ekern allegedly could have requested a portion of UPI stock or property. Because she did not make such a request, it is argued that a corporate purpose was served, for the disturbance which would occur by a change in management or equity division was avoided.

Ekern also contends that the transfer of the interest in the subject real property does not defraud UPI's creditors. The creditors who obtained a mortgage on this property after the execution of the settlement agreement allegedly had actual knowledge of its terms and therefore relied only on Kandell's interest in the property when extending credit.

The issue of whether UPI has a defense under Ga.Code Ann. § 22–714 to any liability it may bear for the provisions of Paragraph 2 of the settlement agreement is one which cannot be determined as a matter of law at this time. There are genuine issues of material fact with regard to whether this transfer served a lawful corporate purpose.

## STATEMENT OF CONTROVERTED FACTS

For a motion for summary judgment to be granted the court must find that there are no genuine issues of material fact remaining to be resolved. Rule 56 of the Federal Rules of Civil Procedure. As there are genuine issues of material fact remaining for this Court's resolution, the motion for summary judgment cannot be granted.

UPI has requested the Court to specify the facts which exist without substantial controversy and those which are in good faith controverted. The facts as to which no controversy exists are those set forth in this Court's "Findings of Facts." The facts which are in good faith controverted are those asserted by the parties with respect to whether UPI and Kandell maintained separate identities. These facts are pertinent to the issue of whether the corporate entity should be disregarded. There are also genuine issues of fact as to whether the conveyance of an interest in the subject real property by Kandell to Ekern served a corporate purpose. These facts are pertinent to the issue of whether UPI has a defense under Ga.Code Ann. § 22–714 against any liability it may have for the provisions of Paragraph 2 of the settlement agreement.

## CONCLUSIONS OF LAW

1. Kandell signed the settlement agreement executed by Ekern and Kandell in his individual capacity and not as agent for UPI.

2. UPI could not have ratified this settlement agreement.

3. There are genuine issues of material fact remaining for this Court's determination. It is therefore

ORDERED that the motion for summary judgment shall be and same is hereby denied.