## THOMPSON *v.* CODY.

1. Since the passage of the evidence act of 1889, and the act amendatory thereof, the claimant, upon the trial of a claim case, is, as between himself and the plaintiff in fi. fa., a competent witness to transactions occurring between himself and the defendant in execution, even though, at the time of the trial, the latter be dead. The witness here objected to falls within none of the exceptions stated in that act.

2. Where the title to a particular tract of land, which the claimant holds through the defendant in execution, is in issue, declarations made generally by the defendant in execution, to the effect, that he had plenty of lands to pay his debts, and that all of his lands were subject to the payment of his debts, are irrelevant, and not admissible.

3. Although the consideration of a deed was expressed as being for love and affection, it is nevertheless competent to support it by evidence which tended to show that there was an additional valuable consideration moving the grantor to its execution.

4. Where, upon the trial of a claim case, the validity of a conveyance under which the claimant asserts his right depends upon whether it was fraudulent, and the evidence is in conflict, the

100   771
112   358.
100   771
113   1166

100   771
128   535

trial judge should submit that question to the jury, and the., direction of a verdict either way is error.

Argued April 13,—Decided May 5, 1897.

Levy and claim.    Before Judge Reese.    Warren supe-- rior court.    October term, 1895.

Upon five promissory notes averaging about $75 each,. Jep. M. Cody obtained judgments against Jack Thomp-- son on November 23, 1888, the notes being dated Decem-- ber 12, 1884, January 1, 1885, and January 1, 1886, and' bearing interest and attorney's fees.    The executions issued. upon these judgments were levied upon 135 acres of land' to which a claim was interposed by John L. Thompson, a. son of the defendant in fi. fa.    Upon the trial the court⁻ directed a verdict for the plaintiff, and afterwards over-- ruled a motion by the claimant for a new trial.

The claimant introduced a deed to himself from defend- ant in fi. fa., in consideration of love and affection, dated November 26, 1886, and recorded on December 31, 1888,. conveying the land in dispute.    By amendment to his· claim affidavit he set up that the deed was in fact for a. valuable consideration, to wit, services performed by him· to his father from the time he became of age on May 1, 1884, to the date of the deed, which services were reason-· ably worth $200; that the deed rests upon the further con-- sideration of the support he gave his father from the date of the deed to his father's death on May 12, 1889, which· was worth $400; that when the deed was made his father was living with him, and was supported by him until his·. father's death; that the land was given him by his father in 1875, after which he made substantial and valuable im-- provements thereon, he having gone into possession of the·· same with his father; and that afterwards in conformity to the previous parol gift his father executed to him the· deed so produced.

There was testimony that Jack Thompson had lived upon the land in dispute for 25 or 30 years up to his death..

Claimant was about 31 years old in November, 1895. In 1875 Jack Thompson divided his land between his children, giving to his daughter, Mrs. Newsome, 50 acres, of which she is now in possession, and to his daughter, Mrs. Smith, 50 acres in 1877, into which she went into possession. She afterwards gave a mortgage thereon, and he stood her security on this debt, and afterwards John L. Matthews purchased the land and paid this debt. To the claimant Jack Thompson gave the land in dispute in 1877, and lived with claimant in the house from the time of the gift to the date of his death in 1888. The reason he gave claimant more land than he gave to his daughters was, that he was to live with claimant who was to take care of him to the time of his death. Claimant did take care of him and waited on him. He was old and required a great deal of attention, some of which was of a very disagreeable though necessary character. Upon this land claimant built a dwelling-house and some outhouses. In November, 1886, Jack Thompson owned 50 acres of land worth $5.00 per acre, besides four head of horses, six bales of cotton, a new wagon, and peas, meat, sheep, hogs, potatoes and cows, aggregating over $900 in value. At the time of his death he owed the Cody debt and a debt to one Lockett. He sold one of the horses for a note of $80, which went into the hands of his administrator, and he died in May, 1889. His estate in the hands of his administrator amounts to $317.50; that is what it brought when sold. No debts have been presented against it except for $23.00 for burial expenses and doctor's bill, both of which have been paid. After the verbal gift to claimant in 1875 and after the deed was made in 1886, Jack Thompson stayed upon the land and farmed as he had always done, continuing to manage and control the land as before, except that in his old age he could not do any work. The farm was run in his name, and the crops and stock belonged to him. He and claimant lived there together. The six bales of cotton

he had in November, 1886, probably would have paid his accounts for that year. The house was put up in 1882 from timber cut from the land; but another witness testified that he sold the lumber to claimant who paid him for it, and that while some of it might have been sawed from stock obtained on the place, most of it was sawed from witness's stock and sold to claimant.

There was testimony by plaintiff, and Howell who was a clerk in his store in 1886 and for several years before, that Jack Thompson had stated, in answer to plaintiff's question when he was getting the goods for which he was indebted, that all the land was his. Claimant would sometimes be present and not object to this; would frequently bring in the cotton himself and pay it; he knew it was all in the old man's name, and never claimed any interest in the land himself. In 1888 plaintiff and Howell went to Jack Thompson's house to see him about this debt. Claimant was there at the time, and witness thought he was close enough to hear the conversation which occurred, in the course of which Jack Thompson pointed out the land around him where he lived and said it was his and subject to his debts, that he had plenty to pay all his debts, etc. Claimant made no objection to this. The conversation occurred just before plaintiff filed his suit. The notes upon which the suits were based were given to cover balance of accounts that would be due from year to year; these accounts were run in Jack Thompson's name, and the credit was extended on security of the land. He told plaintiff the land was his, and not to press him. He said in plaintiff's store several times that this land was his, when he was trading. Claimant was with him, heard these statements, and did not object. He brought plaintiff some of the cotton and did some of the trading. It was all in the name of Jack Thompson, and claimant knew it all the time. The tax books for 1875-1889 showed that Jack

Thompson gave in this land, and that claimant gave in no other property in his own right.

In rebuttal claimant testified that he was never at his father's house in 1888 or at any other time with plaintiff and Howell, that he never at any time or place heard his father tell either of them that he had plenty of land to pay all his debts, nor did this conversation or anything like it ever occur in claimant's presence.

The motion for new trial alleges, in addition to the general grounds, that the court erred in admitting the testimony of plaintiff and Howell, that they heard Jack Thompson say in 1888 that he had plenty of land to pay his debts and that all his land was subject to his debts; claimant objecting on the ground that it was an admission of defendant in fi. fa. before the pending litigation, and that there was no sufficient proof of claimant's presence at the time the admission was made.

Claimant offered to testify that the land in question was given to him in parol by Jack Thompson in 1875, in a division of land between his children. Plaintiff objected on the ground that Jack Thompson was dead, and on this objection the testimony was excluded; whereupon error is assigned.

Error in refusing to hear testimony as to the value of the services rendered by claimant to his father after the division of the land in 1877 up to the time of his death in 1888; claimant offering, in addition to his own testimony, that of Mrs. Newsome, Gip Newsome and John L. Thompson.

Error in refusing to allow John L. Matthews to testify concerning declarations of Jack Thompson made in 1880, 1881, 1882, and at various times before 1886, that he had given said land to the claimant; this having been offered as declarations of a party in possession in disparagement of his own title.

*E. P. Davis*, for plaintiff in error.
*James Whitehead*, contra.

ATKINSON, Justice.

The facts are stated in the official report.

1. To determine the several questions submitted in this case, we will first consider whether the claimant was a competent witness, upon the trial of this case, to testify as to transactions and dealings between himself and the defendant in execution. Under the provisions of our Civil Code, §5269, all persons are competent and compellable to give evidence on behalf of either or both of the parties to a suit, unless such person fall within some of the exceptions stated in that section of the code. In a claim case the only two substantial parties to the issue joined are the claimant and the plaintiff in execution. The defendant is in no sense a party to the issue pending between these two. His death, therefore, at the time of the trial, disqualifies neither the plaintiff in execution nor the claimant, for though being dead, he is not "the opposite party" within the meaning of that term as it is employed in the section of the code to which reference is hereinabove made. When the claimant was offered as a witness on his own behalf in the present case, even though the defendant in execution was dead, he did not fall within any of the exceptions stated in the section of the code referred to, which would disqualify him and render him incompetent as a witness against the plaintiff in execution upon the trial of the claim case.

2. Complaint is made of the ruling of the judge in admitting, over the objection of the claimant, certain declarations upon the part of the defendant in execution, the claimant not being present at the time such declarations were made. The real question at issue in this case was upon the validity of a deed. The claimant alleged that it was executed to him by the defendant in execution in good faith, and upon a proper and valuable consideration. The

plaintiff in execution contended that the conveyance was executed in pursuance of a fraudulent purpose upon the part of the defendant in execution to avoid the payment of his debt. The plaintiff offered to prove that the defendant in execution, after the execution of the deed, but before it was recorded, had made to him in the presence of others the general statement, that he, the defendant in execution, had plenty of lands to pay his debts, and all his lands were subject to the payment of his debts. We think that this testimony was altogether irrelevant. In the first place, so far as he was concerned, he had parted with his title prior to making the declarations referred to, and it was wholly incompetent for him, as against his grantee, to undertake to talk away the latter's estate. Aside from this consideration, we are fully persuaded that the declarations, if admitted, were wholly irrelevant. It may or may not have been true that the defendant in execution had lands. It may or may not have been true that these lands were subject to the payment of his debts. Whether or not they were true would be a matter of indifference to this inquiry; for the only question in this case was whether the particular land sought to be subjected was the property of the claimant, and, therefore, declarations by the defendant in execution in general terms, even if otherwise admissible, to the effect that all his lands were subject to the payment of his debts, would be wholly irrelevant, unless they were offered as against him in litigation to which he was himself a party. We think, therefore, the court erred in admitting in evidence the declarations to which objection was made.

3. The consideration of the deed under which the claimant derived his title from the grantor was expressed to be for love and affection. Upon the trial of the case he offered to prove that, in addition to the good consideration expressed in the deed, there was likewise a valuable consideration moving the grantor to its execution. This testi-

mony was repelled by the court; and we are of the opinion
that therein the court committed error. As a general rule
parol evidence is inadmissible to add to, take from or vary
the terms of a written contract. Our code provides that
the consideration of a deed, as between the parties, may
always be inquired into when the principles of justice
would seem to require it. The parol evidence offered in
this case did not tend either to add to, take from or vary
the terms of the deed. This testimony was entirely con-
sistent with the deed. Its object was to support the deed,
not to destroy it. As was well said by the Supreme Court of
South Carolina in the case of Banks *v.* Brown, 2d Hill's
Chancery Reports, reported in 30 American Decisions,
p. 382, "The general rule is, that parol evidence is inad-
missible to add to or vary the terms of a deed, or to show
any circumstances inconsistent with it; and if the converse
of the rule be true, it follows, that anything may be ad-
mitted which is consistent with it. On this principle, parol
evidence has been admitted to supply a consideration,
where none has been expressed in the deed, and to show a
particular consideration where that expressed was general,
as for 'divers good causes and considerations': 1 Ph. 481,
482, 483. And I cannot perceive why, if there are two
considerations existing at the time of the execution of the
deed, only one of which is expressed, parol should not be
admitted to show the other and better. So far from tend-
ing to contradict the deed, its object is to support it, and
must necessarily be consistent with it—the addition of a
circumstance necessary to give it effect. And it strikes me,
that this is the more reasonable where it is a third party, a
stranger, who seeks to avoid the deed on account of the
want of consideration." This question was practically
ruled in the case of *Dawson* v. *Briscoe*, 97 *Ga.* 408, where
it was held, "A deed to realty of considerable value, though
on its face purporting to be executed upon a nominal money
consideration only, may be supported by evidence showing

that the grantee was the grantor's daughter, and that the real consideration was love and affection." If in that case it were competent to show a good consideration as supporting a consideration expressed to have been for value, it is certainly competent, in support of a consideration expressed to have been for love and affection, to show that there was another independent and valuable consideration moving the grantor to the execution of the deed. We conclude, therefore, that the court erred in repelling the testimony offered.

4. As we have said before, the question in this case turns upon the validity of the conveyance under which the claimant asserts his right. The validity of that conveyance depends upon whether it was fraudulent. Upon the question of fraud or no fraud in the execution of the conveyance there was a conflict of evidence, and there are circumstances from which inferences may be drawn favorable to both the plaintiff in execution and the claimant. Under this state of the testimony, we think the court erred in directing a verdict subjecting the property to the debt of the plaintiff in execution.

*Judgment reversed. All the Justices concurring.*