## BROSSEAU *et al. v.* JACOBS' PHARMACY CO. *et al.*

1. B. entered into a written contract with a corporation, to render to it designated service for a stated remuneration. On the same day he entered into a written contract with J. (who was the president of the corporation), wherein J. agreed to sell to B. ten shares of the capital stock of the corporation, owned by him, for the sum of $15,000, "payment for same to be made with dividends earned on said stock, plus any additional moneys at the option of [B.], who agrees to purchase the aforementioned ten shares of stock at above price and to pay for same as above. In the event said ten shares are paid for, [B.] is hereby privileged to purchase ten additional shares on the same rate, and to be paid for on the same basis as the first ten shares. [B.] further agrees to pay interest on unpaid balances at the end of each year, at the rate of 6% per annum. Transfer of stock to be effected at once." The consideration of the contract of sale of stock is not stated merely by way of recital, but in the mutual promises of the parties; and it falls within the rule that where a written contract states the consideration, not by a mere recital of something paid or to be paid, but sets forth mutual obligations which constitute the terms of the contract, parol evidence tending to vary or contradict such terms will be excluded. Hence parol evidence was not admissible to prove a collateral agreement that the obligation of the vendor to sell the stock was conditioned on full compliance by the vendee with his contract of service with the corporation of which the vendor was president.

2. Before parol evidence can be admitted to show a collateral agreement, it must appear, either from the contract itself or from the attendant circumstances, that the contract is incomplete, and that what is sought to be shown as a collateral agreement does not in any way conflict with or contradict what is contained in the writing.

3. The contract of sale of shares of stock is unambiguous, and parol evidence is not admissible to add to or vary it on the theory of a latent ambiguity.

4. The motive with which a party enters into a contract is no part of its consideration.

5. The clause of the contract, "Transfer of stock to be effected at once,"

presents no such latent ambiguity as will authorize the admission of parol evidence that the parties intended that a delivery of the stock certificate should be postponed until full payment of the purchase-price according to the terms of the contract.

6. The contract of sale of stock is not wanting in mutuality.

AUGUST 16, 1917. REHEARING DENIED AUGUST 31, 1917.

Equitable petition. Before Judge Bell. Fulton superior court. July 8, 1916.

On June 1, 1914, D. I. Brosseau entered into two contracts; one with Jacobs' Pharmacy Company and the other with Dr. Joseph Jacobs, copies of which are as follows:

"Agreement entered into by and between Jacobs' Pharmacy Company, a corporation located in the City of Atlanta, State of Georgia, and D. I. Brosseau, of the same address.

"The parties agree with each other as follows:

"Jacobs' Pharmacy Company agree: To employ said D. I. Brosseau for a period of one year from June 1st, 1914. To vest in him power to engage, discharge, and fix the compensation of employees, to supervise the purchasing of merchandise and expenditures of moneys for any purposes whatsoever, and to negotiate all contracts and matters pertaining to financing, so as to enable him to carry out his plans for increasing the efficiency and profits of the business. To pay said D. I. Brosseau as a salary the sum of $6,000.00, six thousand dollars, per annum, payable as follows: Monthly installments of $416.66, four hundred and sixteen dollars and sixty-six cents, and an additional $1000.00, one thousand dollars, at the expiration of this agreement, to wit: May 31st, 1915.

"Said D. I. Brosseau agrees: To work for the best interests of Jacobs' Pharmacy Company, subject to the business policies of the firm, and to use his best endeavors towards increasing the profits of the business.

"In witness whereof, said Jacobs' Pharmacy Company have caused this instrument and another instrument of even date and like tenor to be signed in its behalf by Dr. Jos. Jacobs, its president, and its seal affixed. D. I. Brosseau has hereunto, and to another instrument of even date and like tenor, set his hand this 1st day of June, 1914.

"Jacobs' Pharmacy Company, by Joseph Jacobs, Pres. (Seal.)

"D. I. Brosseau."

"Agreement entered into by and between Dr. Joseph Jacobs, of Atlanta, Ga., and D. I. Brosseau, of the same address.

"Said Dr. Jos. Jacobs agrees to sell to said D. I. Brosseau ten shares of the capital stock of Jacobs' Pharmacy, a corporation with main offices in Atlanta, Ga., for the sum of $15,000.00, fifteen thousand dollars. Payment for same to be made with the dividends earned on said stock, plus any additional moneys at the option of said D. I. Brosseau, who agrees to purchase the aforementioned ten shares of stock at above price and to pay for same as above. In the event said ten shares are paid for, said D. I. Brosseau is hereby privileged to purchase ten additional shares on the same rate, and to be paid for on the same basis as the first ten shares. Said D. I. Brosseau further agrees to pay interest on unpaid balances at the end of each year, at the rate of 6% per annum. Transfer of stock to be effected at once.

"In witness whereof the parties hereto have attached their signatures, this 1st day of June, 1914.       Joseph Jacobs.

D. I. Brosseau."

On November 28, 1914, Jacobs' Pharmacy Company and Joseph Jacobs filed their petition against D. I. Brosseau and his wife, alleging that Jacobs' Pharmacy Company was conducting a large business, with a number of branch stores, and that its business was of such magnitude as made it necessary to obtain an efficient man to take charge of the financial department of the business. D. I. Brosseau, then a non-resident, sought the position and represented to petitioners that he was a competent·man of large experience and capable of systematizing and conducting businesses of the kind carried on by the Jacobs' Pharmacy Company. He also represented that he was honest, reliable, faithful, and fully capable of discharging the duties pointed out to him. Acting upon the faith of these representations, petitioners agreed to employ him at a salary of $6,000 a year, and as a part of the consideration agreed to let him have $10,000 of the capital stock of the corporation, to be paid for out of the dividends of the corporation. Such contract contemplated that the exclusive time, care, and ability of Brosseau would repay it for the contract, and that Brosseau would in the end become a permanent officer of Jacobs' Pharmacy Company. The contract of employment, of which the contract to let him have the stock was a part, was made only for the period of one

year, in order that he might be fully tried out and tested. Brosseau has occupied the position indicated by his contract for the period of several months, has proved a complete failure, has neither the ability nor the skill represented by him, has made a failure in his undertaking, and has overdrawn his account in the sum of one thousand dollars without the knowledge of petitioners. He is insolvent, and has admitted his inability to comply with the contract; and he is now absent from the city, seeking other employment. The stock is negotiable, has been issued to him, and now is in the physical possession of his wife; and it is his purpose to remove the stock from the jurisdiction of the court and to dispose of it so as to constitute a total loss to petitioners. The prayers were, for a· receiver to take possession and control of the stock; for injunction against the defendants transferring, disposing of, or incumbering the stock, and that the stock be delivered to petitioners as their respective property. The defendants filed their separate answers admitting the contract, but denying the charges made against them in the petition. The issues made by the pleadings were submitted to the court without the intervention of a jury, who adjudged that Jacobs' Pharmacy Company and Joseph Jacobs were entitled to a cancellation of their respective contracts with D. I. Brosseau, and to an injunction against the transfer or incumbering of the stock, and the stock certificate was ordered to be delivered to Joseph Jacobs. A motion for a new trial was overruled, and the defendants excepted.

*Little, Powell, Smith & Goldstein,* for plaintiffs in error.

*Charles T. & Linton C. Hopkins,* contra.

EVANS, P. J. (After stating the foregoing facts.) Brosseau made two contracts. One was with Jacobs' Pharmacy Company, a business corporation, the subject-matter of which was service to be rendered to that corporation, of which Dr. Joseph Jacobs was the president. He made the other contract with Dr. Jacobs as an individual, and the subject-matter of it was the sale of certain shares of the capital stock of Jacobs' Pharmacy Company, which Dr. Jacobs personally owned. The corporation and Dr. Jacobs joined in the suit for the cancellation of both contracts, on the theory that Brosseau had violated and abandoned his contract of service and had admitted his inability to comply with his obligations therein contained, and, that contract thus becoming void, the con-

tract for the purchase of stock fell with the contract of employment. No objection was raised as to the joinder of plaintiffs. The evidence authorized a finding that the consideration of the contract of employment had failed, and that contract was no longer obligatory. The various assignments of error relate to the question whether it was competent to show by parol evidence that the contract for the purchase of stock was dependent upon Brosseau performing his duties under his contract to work for Jacobs' Pharmacy Company, and to the question whether the provision in the contract that the transfer of stock was to be effected at once could be shown by parol evidence to mean that the stock was not to be delivered until paid for as prescribed in the contract.

1. The two contracts are not between the same parties; they do not refer to each other; and are separate and independent agreements, so far as the instruments themselves disclose. The general rule is that parol evidence is not admissible to add to, take from, or vary a written contract. There are certain exceptions; and it will be our purpose to inquire whether the evidence objected to falls within any recognized exception to the general rule. One exception to the parol-evidence rule is that the consideration of a contract is open to inquiry; but this rule is applicable only when the statement of the consideration in the contract is merely by way of recital. If the consideration be so stated in the contract as to make it one of its terms or conditions, as where the consideration consists of mutual promises expressed in the contract, a different consideration, whether variant or additional, can not be shown by parol. *Burke* v. *Napier,* 106 *Ga.* 329 (32 S. E. 134); *Wellmaker* v. *Wheatley,* 123 *Ga.* 201 (51 S. E. 436). An inspection of the contract for the purchase of shares of stock will disclose that the consideration is not expressed by way of recital, but that the mutual undertakings of the parties are given as the terms of the contract. Hence a parol inquiry into the consideration is not permissible on this idea.

2. Again, it is insisted that the contract of purchase of stock carries an internal suggestion that it is incomplete, and that parol proof that a part of its consideration was the performance of the contract of service may be given. This court has recognized and applied the rule that before parol evidence can be admitted to show a collateral agreement, it must appear, either from the contract

itself or from the attendant circumstances, that the contract is incomplete, and that what is sought to be shown as a collateral agreement does not in any way conflict with or contradict what is contained in the writing. *Forsyth Mfg. Co.* v. *Castlen,* 112 *Ga.* 199 (37 S. E. 485, 81 Am. St. R. 28). The contract for the purchase of shares shows no incompleteness. Its terms may be unusual, and the equation of reciprocal benefits may not be in exact balance; but the algebraic formula of a perfect equation can not be invoked to destroy the liberty of contract. It is not necessary to the validity of a contract of sale that the thing purchased be the exact equivalent of the promised consideration. Mere inadequacy of consideration alone will not void a contract. Civil Code (1910), § 4244. To allow proof of terms or conditions additional to those expressed in the contract would be to fritter away the rule. Even if extrinsic proof should be allowed to show that the attendant circumstances afford an inference that the contract was incomplete in the statement of the reciprocal obligations of the parties, parol evidence will not be received to show that, in addition to the obligations expressed in the writing as the consideration of the purchase of the shares of stock, the vendee also agreed to perform a contract with another person. The rule which permits supplementary proof in case of apparent incompleteness in written statements of the obligations of the parties denies parol proof variant from the written terms by the imposition of additional and other terms dependent upon a contemporaneous parol agreement. If Brosseau and Dr. Jacobs made a contemporaneous agreement that the contract of sale should not be binding unless Brosseau should carry out his agreement with the Pharmacy Company, such oral agreement would contradict the writing by imposing an additional term of contract, and parol evidence of it would be rejected. This court has decided that parol evidence is inadmissible to show that a note given for the purchase-price of machinery was not to be paid unless the machinery should do a certain amount of work in a given time. *Lunsford* v. *Malsby,* 101 *Ga.* 39 (28 S. E. 496). The effect of allowing parol evidence that Dr. Jacobs' contract for the sale of his stock to Brosseau was dependent upon the service rendered by the latter to Jacobs' Pharmacy Company is to set up that a written contract should become void upon the happening of a certain contingency resting in a parol

collateral agreement, which is not permissible.  5 Chamberlayne on Evidence, § 3553.

3.  The contract is not ambiguous.  Jacobs agrees to sell to Brosseau ten shares of the capital stock of Jacobs' Pharmacy Company for the sum of fifteen thousand dollars to be paid from dividends of the company, with the option to Brosseau to pay additional sums on the purchase-money.  Brosseau agrees to purchase the ten shares of stock at the price stated, and to pay for same as stated, and further agrees to pay interest on unpaid balances at the end of each year at the rate of 6 per cent. per annum.  At the end of each year the annual dividend is to be applied to the purchase-price, and Brosseau is to pay 6 per cent. interest on these annual balances.  The terms of the contract are expressed with clearness, and parol evidence will not be allowed to raise an ambiguity for the purpose of proving that the contract was different from that expressed in the writing.

4.  Nor is parol proof admissible to show that the motive of the vendor in selling shares of stock was to secure the vendee's services for Jacobs' Pharmacy Company, because the motive with which a party enters into a contract is no part of its consideration.  9 Cyc. 320.  "The consideration must be of some value in the eye of the law, and must move from the plaintiff to the defendant.  Hence a disappointment of the motive, by the fraudulent misrepresentations of the plaintiff, is not a fraud on the contract, and is not available as a defense."  *Austell* v. *Rice,* 5 *Ga.* 472.  The parol testimony allowed by the court, of the motive of Dr. Jacobs in entering into the contract and that the contract of sale of shares of stock was dependent on the performance of the contract of employment with Jacobs' Pharmacy Company, was improperly received.

5.  The contract of sale of shares of stock contained this clause:  "Transfer of stock to be effected at once."  On the theory that this clause was ambiguous the court allowed parol evidence that the certificate of shares was not to be delivered until paid for.  This clause is laconic, but is neither equivocal nor cryptic.  In the absence of these words, the vendee would have no right to demand a transfer of the stock until paid for according to the terms of the contract.  The parties meant something by inserting this clause in the contract, and the obvious import of the language is

that the stock purchased should be at once transferred and delivered to the purchaser.

6. Finally, it is earnestly argued that the contract for the sale of the shares of stock is unilateral. We do not think so. Without restating the contract, we call attention to the fact that Dr. Jacobs agrees to sell ten shares of stock to be paid for out of dividends of the corporation, plus any additional moneys at the option of Brosseau; and Brosseau agrees to purchase the stock on the terms stated, and to pay interest on unpaid balances at the end of each year at the rate of six per cent. per annum. The contract contains mutual obligations, and is not deficient in mutuality. The purchase-price is $15,000; at the end of each year dividends are to be credited on the purchase-price, and the vendee is to pay to the vendor 6 per cent. on the net balance.

· Because of the admission of the parol testimony varying the terms of the contract, the judgment refusing a new trial must be

*Reversed. All the Justices concur.*