McCANN *et al. v.* GLYNN LUMBER COMPANY *et al.*

No. 15189.   July 9, 1945.   Rehearing denied July 23, 1945.

*W. Glenn Thomas, Joe Thomas,* and *Highsmith & Highsmith,* for plaintiffs.

*Reese, Scarlett, Bennet & Gilbert,* for defendants.

BELL, Chief Justice. The defendants in error, defendants below, contend that the lease contract is ambiguous as to the quantity of timber that could be cut and removed under the right granted, basing this contention mainly upon the general recital of $35,000 as consideration, and insisting further, that, as explained by the testimony which they introduced, the agreement conveyed the right to cut only $35,000 worth of timber at the stated price of $12.50 per one thousand feet. From the pleadings and the evidence, and the briefs of counsel, the validity of these contentions appears to be the controlling question.

1. "The construction of a contract is a question of law for the court. Where any matter of fact is involved (as the proper

reading of an obscurely written word), the jury should find the facts." Code, § 20-701. "The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." § 20-702. "Parol evidence is inadmissible to add to, take from, or vary a written contract. All the attendant and surrounding circumstances may be proved, and if there is an ambiguity, latent or patent, it may be explained." § 20-704 (1). "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." § 20-704 (4). "Parol contemporaneous evidence is inadmissible generally to contradict or vary the terms of a valid written instrument." § 38-501. "Parol evidence shall be admissible to explain all ambiguities both latent and patent." § 38-502. The intention of the parties is determined from a consideration of the entire contract; and, if possible, all of its provisions should be so interpreted as to harmonize with each other. *Simpson* v. *Brown,* 162 *Ga.* 529 (134 S. E. 161, 47 A. L. R. 865) ; *Spooner* v. *Dykes,* 174 *Ga.* 767 (2) (163 S. E. 889). The contract here appears upon its face to be complete, that is, to embody an entire agreement, and there is no question as to fraud, accident, or mistake. Code, § 38-504; *Forsyth Manufacturing Co.* v. *Castlen,* 112 *Ga.* 199 (6) (37 S. E. 485, 81 Am. St. R. 28) ; *Brosseau* v. *Jacobs' Pharmacy Co.,* 147 *Ga.* 185 (2) (93 S. E. 293). Accordingly, under the foregoing rules, the question as to quantity must be determined by the court as a matter of interpretation, unless there is an ambiguity, latent or patent, such as would render parol evidence admissible in relation to that question.

While, as we have stated, the agreement must be finally considered in its entirety, let us first examine it without reference to the general recital as to consideration, after which we will consider it as a whole and in the light of such recital. Stripped of such recital, the lease contract would not contain the slightest hint that there was any intention to sell only $35,000 worth of timber at the stipulated price of $12.50 per thousand feet, as contended by the defendants, rather than all of the timber, regardless of quantity, at the stated price per thousand feet, subject only to

the expiration of the lease on December 31, 1946, as contended by the plaintiffs. In this statement, we are looking, of course, at paragraph 2 of the contract, which, aside from the immediately preceding statement "that this lease applies only to timber on the west side of Buffalo Swamp," contains literally the first indication as to what, if anything, is being sold, or even as to the nature and purpose of the agreement. It contains the first and only granting clause, and the first and only complete description of the timber. Nor is there any later qualification of such description—unless we are to assume that some of the later provisions are inseparably linked with such general recital of consideration. In that paragraph, the vendor granted a license to cut and remove "the timber (either standing or on the ground) hereinafter described on said described lands," and then, in subparagraphs (a), (b), and (c), he fully described the timber as to kinds and dimensions. Necessarily, *the* timber meant all of the timber as thus described (41 Words & Phrases, Perm. ed. 461); and note also the clause in subparagraph (c), "The vendee to utilize all merchantable timber herein described." Whether this clause refers only to the pine timber, described in this subparagraph, it is apparently inconsistent with the claimed limitation. The price is stated in paragraph 3 as $12.50 per one thousand feet.

We next consider paragraph 7. Excepting the guarantee as to the repair of roads and bridges, this paragraph refers only to the terms of payment of the previously stated price of so much per thousand, stating that deposits or partial payments shall be made from time to time in advance of cutting, "until there remains only approximately $5000 worth of timber left to be cut under the within lease as hereinabove provided for," the deposit for this last $5000 worth of timber having been made at the execution of the contract, being a part of the initial payment of $8000. By these provisions, the vendor was to be paid for all timber before it was cut, not as an entirety, but in quantities of $5000 worth at the stipulated price of $12.50 per one thousand feet.

From what has been said, we think it is perfectly clear that the plaintiffs were not limited to the cutting and removal of any particular quantity of timber, unless it should be otherwise because of the recital of $35,000 as consideration. We will now consider the contract as a whole—that is, with this clause included.

In the light of the other provisions and the applicable rules of construction, it is apparent that the consideration as recited was not the consideration for the timber itself, but was the consideration or part of the consideration, mutual covenants also being mentioned, for the act of the vendor in agreeing to the subsequent provisions of the contract, whereby he granted to the other parties, called the vendees, a license to cut and remove the timber as described at so much per one thousand feet, subject to termination of the lease at the time therein stated. The consideration for the timber itself would be the $12.50 per one thousand feet agreed upon in paragraph 3, as to which the obligation and terms of payment would be governed by paragraphs 2 and 7. We are not here concerned with any question as to whether the vendees were actually obligated to cut and remove, that is to say, to purchase, any part of the timber described. Whether the agreement did grant a "license" only, or whether it went further and imposed an actual obligation to purchase, the parties could lawfully enter into an agreement of either character, and the grantor could at the same time exact a consideration for entering into it, entirely apart from the consideration for the timber itself, as cut and removed in accordance with the contract. *Weed* v. *Lindsay,* 88 *Ga.* 686 (15 S. E. 836, 20 L. R. A. 33) ; *Andrews* v. *Stulb,* 145 *Ga.* 826 (90 S. E. 59) ; *Jordan* v. *Cook,* 159 *Ga.* 6 (124 S. E. 686) ; *Clark* v. *Bandy,* 198 *Ga.* 564 (2) (32 S. E. 2d, 245) ; and see especially, *Simpson* v. *Sanders,* 130 *Ga.* 265 (2) (60 S. E. 541) ; *Luke* v. *Livingston,* 9 *Ga. App.* 116 (70 S. E. 596).

While it may be true that in contracts regarding the sale or possible sale of property, we generally think of consideration as the amount paid or to be paid for the property itself, consideration may not always have that meaning, and under the terms of the present contract, as properly construed, we are satisfied that it was not so intended in this instance. In applying this interpretation, we accord a place to each and every part of the agreement, and give full weight to each according to the apparent intention of the parties, judged by the language used, and considering the agreement as a whole.

Certain matters have already been mentioned as not being within the scope of the present inquiry. The liability of the plaintiffs, if any, under the general recital to which reference has been made,

and whether on such an issue parol evidence would be admissible for the purpose of inquiring into the consideration, are additional questions which are not before us at this time. Accordingly, nothing contained in this opinion is intended as an expression or intimation thereon.

In view of what has been said, the contract was not ambiguous in the sense that parol evidence would be admissible for the purpose of explaining its meaning with reference to the quantity of timber that could be cut and removed under the right granted; nor was there any limitation as to quantity. Therefore the court erred in admitting the parol evidence to which objection was made, and in not granting an injunction as prayed by the plaintiffs; nor should the plaintiffs have been enjoined on the cross-prayer of the defendants.

While we might rest our conclusion upon what has been stated in the preceding division, we may say that we have not in that division construed the contract precisely as it has been presented to us by either side, and this being true, some additional observations will be made.

Even assuming that the recital mentioned might be taken as referring to the consideration for the timber itself, as insisted by the defendants, rather than for the act of the vendor in entering into the contract, as stated in the preceding division—and certainly this would be the only other interpretation that could be urged with any degree of plausibility—still, such general recital could not, in our opinion, be properly treated as limiting or qualifying the plain and specific terms of paragraph 2, whereby the plaintiffs were granted a license to cut and remove all the timber, regardless of quantity, at the stipulated price of $12.50 per one thousand feet, subject only to the expiration of the lease on December 31, 1946. On the contrary, the particular and explicit language would restrain and limit such general recital. "The general rule of construction applicable to all writings, constitutions, statutes, contracts, and charters, and even to ordinary conversations, is this: that general and unlimited terms are restrained and limited by particular recitals, when used in connection with them." *Torrance* v. *McDougald,* 12 *Ga.* 526 (2). See also *Osteen* v. *Wynn,* 131 *Ga.* 209 (2) (62 S. E. 37, 127 Am. St. R. 212); *Rowland* v. *Mathews,* 153 *Ga.* 849 (2) (113 S. E. 442), referring to the descrip-

tion of land; and *O'Callaghan* v. *Bank of Eastman,* 180 *Ga.* 812, 817 (180 S. E. 847), referring to a pleading.

Furthermore, we do not have here a mere comparison of general language in a contract with that which is specific. What we do have is a mere recital of consideration, which is one of the weakest elements to be found in any written contract, to be weighed against the granting and descriptive clauses, which, to say the least, are of vital importance in any instrument. In *Harris* v. *Hull,* 70 *Ga.* 831, it was said that, "What is most material and most certain in a description shall prevail over that which is less material and less certain;" and we see no reason why the same rule of construction should not be applied in determining what is covered by the descriptive terms as to subject-matter in the instant timber lease.

As illustrating the inherent weakness of the recital in question, we need only recall a few elementary principles. The consideration of a deed or other contract may always be inquired into when the principles of justice require it. Code, § 29-101. Where the consideration is expressed merely by way of recital, it is permissible to show by parol evidence that the real consideration is in fact different from that expressed in the instrument. *Cottle* v. *Tomlinson,* 192 *Ga.* 704 (4) (16 S. E. 2d, 555). It has been held that, where a deed recites a money consideration, it may be shown to be a voluntary conveyance (*Leggett* v. *Patterson,* 114 *Ga.* 714 (2), 40 S. E. 736; *King* v. *Mobley,* 150 *Ga.* 256 (2), 103 S. E. 237); and, conversely, it has been held that, where a deed states love and affection as the consideration, a money or other valuable consideration may be shown. *Thompson* v. *Cody,* 100 *Ga.* 771 (3) (28 S. E. 669); *Farrar Lumber Co.* v. *Brindle,* 170 *Ga.* 37 (3) (151 S. E. 923). See also *Stone* v. *Minter,* 111 *Ga.* 45 (2) (36 S. E. 321, 50 L. R. A. 356). Nor does a recital of payment of the purchase-money in a deed or other contract estop the maker from denying the fact and proving the contrary. Code, §§ 29-110, 38-114. "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject-matter upon which it can operate." § 20-107. We thus see that among the essentials of a contract a consideration is one thing, while a subject-matter is another and different thing. So, if, in this case, the subject-matter has been clearly and specifically described, it could

not properly be diminished or limited by a mere general recital of consideration in some other part of the agreement. Any such treatment would allow the otherwise clear and specific terms as to the quantum of the subject-matter to be varied under the guise of inquiring into the consideration, which is never permissible under the law. *Coldwell Co.* v. *Cowart,* 138 *Ga.* 233 (2), 236 (75 S. E. 425) ; *Rheney* v. *Anderson, 22 Ga. App.* 417, 419 (96 S. E. 217) ; *Middlebrooks* v. *Dunlap-Huckabee Auto Co., 44 Ga. App.* 543 (162 S. E. 153). We do not in this view ignore such a general recital as to the consideration, but we merely relegate it to its legally subordinate place in comparison with the other terms and conditions of the agreement. A contract may be so clear as not to require interpretation, but a mere lack of clarity on casual reading is not the criterion for determining whether a contract is afflicted with ambiguity within the rule as to the admission of parol evidence to explain its meaning. Nor is a contract ambiguous within that sense merely because it may be even difficult to construe. The construction of a contract, if needed, being a question of law for the court, as well as a duty that rests upon the court, there can be no ambiguity within the rule to which we have referred, unless and until an application of the pertinent rules of interpretation leaves it really uncertain which of two or more possible meanings represents the true intention of the parties. Code, §§ 20-701, 20-702 ; 3 Words & Phrases (Perm. ed.) 312.

We do not overlook the decision in *Novelty Hat Mfg. Co.* v. *Wiseberg,* 126 *Ga.* 800 (55 S. E. 923), defining ambiguity, and nothing which we have said conflicts with that decision. Nor is there any conflict with *Shackelford* v. *Fitzgerald,* 151 *Ga.* 35 (105 S. E. 597). In the latter decision, it was said : "The part of the lease written with pen and ink inserted in the blank form seems to have been intended to describe the thing leased. It contains a more specific description of the subject-matter of the contract than that contained in the other parts of the instrument which are in the printed form and which are general in their nature. The words containing the specific description should prevail, if the two can not be reconciled." This statement supports the conclusion that we have reached in the instant case as to the greater weight of the specific terms of the contract.

The phrase, "as hereinabove first provided for," in paragraph 2,

can not reasonably be construed as referring to anything preceding that paragraph; for, as we have seen, that was the first paragraph which contained anything in the nature of a lease, and it was only in that paragraph that any specific description of timber was given. The recital of $35,000, though appearing before it in the contract, did not within itself indicate anything whatever as to the nature and purpose of the agreement. So, even if the recital might be taken as referring in some way to the consideration for the timber itself, as assumed in this division, we reach the same result as in the preceding division.

*Judgment reversed. Bell, C. J., Duckworth, Atkinson, and Wyatt, JJ., concur.*

ATKINSON, J., concurs specially for the reasons stated in the first division of the opinion.

JENKINS, Presiding Justice, dissenting. The contract appears to me ambiguous; not only ambiguous in the dictionary sense, but ambiguous in a way that the recognized rules of law are helpless to clarify and resolve. If its meaning could, in fact, be arrived at by the mere application of legal principles, such as are set forth in the majority opinion, there would be no difficulty in agreeing with my colleagues that it is not ambiguous in the sense contemplated by the Code, § 38-502, which permits the introduction of aliunde proof to arrive at the meaning intended by the parties to an ambiguous contract. Surely it ought not to be said that the stated consideration of $35,000 can be arbitrarily or capriciously brushed aside. As I understand the majority opinion, such is not the intent of its ruling. The majority opinion treats the stipulated $35,000 consideration in the light of two different interpretations. The first division of the opinion holds that the contract necessarily means that the $35,000 consideration was stated merely by way of recital setting forth the inducement by which and under which the vendor agreed to sell the entire described timber at $12.50 per thousand feet. The second division of the opinion treats the stated $35,000 on the assumption that it set forth the amount of the purchase-price of the timber conveyed. Under the latter assumption, it is not contended that such a stated purchase-price consideration, when taken together with the other provision that the timber must be accounted for at $12.50 per thousand feet, would not fix and determine the quantum of the

timber conveyed. In dealing with the meaning of the contract on this latter assumption, the second division of the majority opinion weighs the statement of the $35,000 purchase-price consideration in the balance and finds it wanting, as compared in force with other provisions of the contract setting up the quantum of the property sold. In doing this, it makes application of stated legal principles, and in effect altogether discards the stipulation as to the purchase-price consideration in favor of other provisions. I could well agree with the treatment embodied in the first division of the majority opinion, if the one and only reasonable interpretation of the agreement was that the vendor in consideration of the sum of $35,000 had agreed to sell all the timber on certain described land at a certain designated price per thousand feet. Under any such enforced construction, it would not be necessary to apply the principle that the stated consideration of a contract can ordinarily be inquired into, since under *such* an interpretation the subject-matter and quantum of the property sold would be unequivocally described and measured independently of any statement of the consideration which induced the vendor to *enter upon* an otherwise *complete agreement*. But, as I see it, this is not the only reasonable interpretation which the language of the contract permits, nor do I understand that the vendee so contends, but on the contrary he, by his evidence embodied in the record, in point of fact repudiates the idea that it was intended that he was to pay the sum merely for the privilege of obtaining a contract for the purchase of the timber at $12.50 per thousand. The $35,000 stipulation, which can not be simply ignored, may just as readily be taken to mean that it represents, *not* the consideration for entering upon the contract, but the purchase-price of the timber conveyed, and that it therefore measures the quantum of timber sold from the described tract at the stated price of $12.50 per thousand feet. Under either view, the timber involved would have to be definitely described. Under such latter interpretation, the statement of the $35,000 consideration, or purchase-price, does not have to be ignored or repudiated, but can be given full effect. Under such an interpretation, the statement of the purchase-price consideration can not be brushed aside by legal construction in determining the quantum of the timber sold. This for the very simple reason that, under such a construction, the consideration is what measures

the quantum of the property conveyed. While it is true that ordinarily the consideration of a contract can be inquired into, it has always been recognized that such can not be done, nor can the consideration be questioned or impeached, when it is stated, not as a mere recital, *but as a part of the terms and conditions of the agreement itself.* Byrd v. *Marietta Fertilizer Co.,* 127 *Ga.* 30 (56 S. E. 86); *Ramsey-Fender Motor Co.* v. *Chapman,* 46 *Ga. App.* 385 (168 S. E. 92). As is conceded in the majority opinion, in a contract for the purchase and sale of property the stated consideration ordinarily and usually refers to the purchase-price of the thing conveyed. Especially would it seem that such a construction can reasonably be implied in this case where the consideration is stated, not as $1 or $5 or $10, but the immense sum of $35,000; and where the contract, in providing for periodical payments of $5000, and in referring to the last of such payments, states as follows: "until there remains only approximately $5000 worth of timber left to be cut under the terms of the lease as hereinbefore *first provided for.*" (Italics mine.) What does the remaining uncut timber, "as first provided for" by the contract, mean? The very *first* provision of the contract sets up the consideration of $35,000. Later the contract explains the quantum of the property conveyed under the "lease" by further providing that the timber shall be accounted for at $12.50 per·thousand. It thus appears that one ordinary, natural, and reasonable interpretation of the lease is that it "first provided" the consideration for *the property sold,* and then stipulated the price per thousand of the timber conveyed, thus making certain both the consideration to be paid and the quantity of timber intended to be embraced. Under such a view, the contract clearly speaks for itself and needs no interpretation, nor will it permit any. While I agree that the contract is *susceptible* to the first of the two stated interpretations, must we decide that it is the only interpretation, and thus resolve the present controversy in favor of the vendee as to what timber was covered by the lease by thus holding, not only in the absence of any such contention by the vendee, but in contradiction of his own evidence? It' is true that it can not be said that the contract is altogether definite as to which *kind* of timber was to be cut. All sorts seem to. have been lumped together under a fixed price of $12.50 per thousand, with the result that, under *either* of the two interpreta-

tions which have been mentioned, the purchaser could have picked out the tracts or parcels of more valuable timber (assuming that some are more valuable than others) and could have left the parcels of the less valuable kind uncut. The agreement appears wholly ambiguous as to which of the two mentioned reasonable but antagonistic constructions, either of which is plain if it be accepted, the contract was intended to speak; and the rules of law as to the construction of contracts being helpless to interpose for the purpose of determining which was in fact in the minds of the parties, the only possible recourse was that permitted by the trial judge under the provisions of the Code, § 38-502. This section allows the admission of aliunde proof to answer a riddle which the law itself is unable to solve.