**VESY, Plaintiff, v. GILES et, Defendants.**

Common Pleas Court, Geauga County.

No. 11129.   Decided March 13, 1952.

Badger, Pyers & Miller, Millersburg, Henry Golland. Cleveland, for plaintiff.

Roudebush, Adrion, Sanborn, Brown & Corlett, Cleveland, for defendants.

## OPINION

By THOMAS, J.

Plaintiff, the 79-year old sister of Nora Giles, sues to set aside a deed which Nora Giles executed on August 14, 1951, at the age of 82 and in which deed she conveyed 2.63 acres of real property in Bainbridge Township to the defendant, her nephew by marriage.

Nora Giles, hereafter called the grantor, died on September 13, 1951 and later on that day the defendant recorded the deed.

For reasons later stated defendant's motion for judgment made at the conclusion of all the evidence is OVERRULED and the case will be determined as a matter of law and fact.

In condensed form plaintiff charges as grounds for rescission of the deed **first** that the grantor was mentally incapable of executing the deed; **second** that the defendant procured the execution of the deed by exercising undue influence over the grantor; and **third** that the deed was void by reason of an absence of consideration.

Before taking up each of these claims it is important to note that there is no controversy in the evidence concerning compliance with the formalities for executing deeds prescribed by statute. **(Sec. 8510 GC.)**

Corroborating what appears on the face of the deed Clare Miner, then a Justice of the Peace in Bainbridge Township, and Earl Greaves testified without contradiction, that on August 14, 1951 in her suite of rooms in defendant's home in Bainbridge the grantor signed the deed in their presence, that she acknowledged her signature to be her free act and deed, that they signed as subscribing witnesses, and that Justice of the Peace Miner took the grantor's acknowledgment and signed the deed accordingly.

Performance of the statutory formalities of execution imports an intention by the grantor to dispose of her property to the defendant.

Under such circumstances if the plaintiff would upset the deed, the burden rests on her to prove by CLEAR AND CONVINCING EVIDENCE her claims of the grantor's mental incapacity and the defendant's undue influence over the grantor. **Willis et al v. Baker, Guardian (first syllabus) 75 Oh St 291. Laymon v. Bennett (fifth syllabus) 75 Oh Ap 233, 30 O. O. 581.**

First to be decided is the claim that the grantor was

"mentally incapable of transacting ordinary business and was mentally incapable of understanding, executing and delivering a deed of conveyance on August 14, 1951."

Mental incapacity means not partial but complete incapacity to formulate an intention to convey one's property measured at the time the conveyance was made. Even an imperfect assent given by an insane person has been held to be mental capacity. **Fissell v. Gordon, 83 Oh Ap 350, 38 O. O. 407.**

Moreover, feebleness of body, periods of mental confusion and a memory not as sound as it once was are not enough to deprive a grantor of the right to dispose of his property in any way he may wish or deem best, a subject upon which he may have reflected much when in full vigor of mind and body. Boyer v. Boyer 14 CC (N. S.) 305 at 310, affirmed without opinion, **88 Oh St 607.**

Did the grantor have mental capacity as thus defined when she executed her deed to the defendant on August 14, 1951?

Plaintiff's witnesses had the following to say: Mary Stevenson, one of the plaintiff's daughters, saw the grantor about August 12th. At that time she did not think that the grantor was as alert as she used to be. The plaintiff talked with the grantor on August 19th, was alone with her and in describing her mind on that occasion said it wasn't just clear. Elias Bragg, who drove the plaintiff to see her sister on that occasion, said he found it possible to carry on a rational conversation with the grantor.

Defendant's witnesses testified as follows about the grantor's mental capacity:

Doctor Willard C. Stoner, who saw her four times from August 2, 1951 until her death, stated that her mental state was quite good for a woman of her age. He said that her cancer, which was in the pelvic region, did not affect her brain. It was not until September 11th, two days before her death, that the first drug was administered. The Doctor told how the grantor would ask someone to get her purse and take money out of her purse to pay his fees.

Eileen Boyle, a graduate registered nurse, attended the grantor from July 26, 1951 until her death. She found the grantor to be very alert for her age, found no mental abnormality and stated that she had no difficulty in carrying on a conversation. The grantor combed her own hair and trimmed her toenails.

Edward Boyle, a plumber who installed a sink in grantor's suite on August 16th, said he was there seven hours, carried on a general conversation with her about his work and observed no abnormality in the grantor's conversation.

Earl Greaves, one of the attesting witnesses stated that he met the grantor for the first time when he signed the deed. She asked him if he was the young fellow who was building the house across the road and stated that she had been following its progress. He referred to her quick wit. ·He said she examined the deed before she signed.

Describing the execution of the deed Justice of the Peace Miner related that he and the grantor talked about old times. Before she signed he heard her say to the defendant, "Charlie, can't you sign this for me—my old hands are pretty well crippled up."

The testimony of the nurse and the doctor is accepted as the best evidence of the grantor's general mental condition during the month of August, 1951. They saw her more often than the other witnesses, they had more experience in evaluating and comparing the mental condition of persons in similar circumstances, and they have no interest in the outcome of the case. From their testimony it is plain that the grantor's mind was normal for a woman of her age. Her competence to handle payment of the doctor's charges shows that she retained ability to conduct her own business affairs.

Furthermore, the undisputed evidence of the attesting witnesses indicates that she was entirely competent at the time she executed the deed. Her examination of the deed before she signed it and her normal and rational conversation with the attesting witnesses permit and require the inference that in signing the deed she definitely knew what she was doing.

On all the evidence the plaintiff has failed to prove even by a preponderance of the evidence that the grantor lacked mental capacity when she signed the deed.

Next to be decided is plaintiff's claim "That Charles H. Giles —by her position in the home and under the control of Charles H. Giles, and well knowing of his influence over her, procured a Notary to prepare said deed of conveyance without the knowledge or consent of Nora A. Giles, and by the exercise of undue influence persuaded Nora A. Giles to sign said deed of conveyance without understanding or being capable of understanding the nature and contents thereof."

In short, plaintiff contends that the defendant exercised undue influence over the grantor arising out of a confidential relationship with her.

Confidential relationships exist between attorney and client, guardian and ward, trustee and beneficiary, parent and child. Generally it is the law that no confidential relationship can exist with reference to a parent's deed of property to his child.

**McAdams v. McAdams, Sr., 80 Oh St 232, 244.** However in that case an adult son, an attorney at law, had served as scrivener of the deed conveying property from his father to him. These circumstances created a confidential relationship the Supreme Court held. Similarly in **Peterson v. Mitchener, 79 Oh Ap 125, 133, 34 O. O. 490,** adult children living with their mother while other brothers and sisters lived outside the home were found to stand in a confidential relationship towards the mother with reference to the mother's conveyance of her interest in family property to the two children with whom she lived.

Hence it seems clear that under special and particular circumstances an adult child may bear a confidential relationship towards a parent with reference to property conveyed by a parent to such adult child.

In light of these principles is there a confidential relationship present in this case? Here are the relevant facts.

After the death of grantor's husband in 1906, the defendant, her husband's nephew, resided with her and was raised by her.

In 1921 the defendant married and for 5 years he and his wife lived in grantor's home.

Under the will of grantor's husband, who was defendant's uncle, the grantor was given a life interest in her husband's property in Bainbridge Township and the defendant was given the remainder interest in said property.

In about 1925, on two parcels, each 2.63 acres in size, the defendant built two homes, one for the grantor and one for himself and his wife. Though defendant paid for the building of grantor's home, she later reimbursed him.

In 1934 grantor deeded her life interest in the parcel on which the defendant was residing to the defendant and the defendant deeded his remainder interest to the grantor in the parcel on which she was residing.

The defendant and the grantor continued to live in these homes located side by side until the defendant built a new home in another location in Bainbridge Township about 1946. In the new home a suite of rooms was prepared for the grantor into which she moved in 1946 and which she occupied until her death.

Thus it is evident that the grantor and the defendant were as attached to each other as if they were mother and son. This bond grew closer as the grantor grew older, and her dependency on the defendant increased as her physical condition deteriorated. The extent of the grantor's confidence in the defendant and her reliance on him is revealed and epitomized in what she said to him just before she signed the deed. According to Justice of the Peace Miner she said, "Charlie, can't you sign this for me—my old hands are pretty well crippled up."

By reason of the grantor's advanced years, her incurable illness, her hands crippled by arthritis, her close attachment to the defendant, her residing in his home, and because of the obvious faith which she reposed in the defendant, it is concluded that there was a confidential relationship between them.

The existence of a confidential relationship raises an inference that the defendant took undue advantage of the grantor and therefore required that defendant's motion for judgment be overruled. But the burden of proof does not thereby shift to the defendant. Only the burden of going forward with evidence which will rebut the inference is cast upon the defendant. If that inference is counterbalanced the original obligation still remains with the plaintiff to show by clear and convincing evidence that the defendant exercised undue influence over the grantor in procuring the execution of the deed to the defendant. McAdams v. McAdams, and Peterson v. Mitchener, supra. The Second District Court of Appeals which decided the Peterson case showed by their later decision in ■ **McDevitt v. Morrow, 57 Abs 281** that proof of good faith will rebut any inference of undue advantage arising from a situation in which a parent conveys property to an adult child living with him.

It is uncontradicted in this record that the grantor, beginning in April, 1951, and on several occasions thereafter, had been after the defendant to have the deed prepared which he finally had prepared in August. It may be said with equal force as it was said in McAdams v. McAdams supra, p. 240 that "Whatever presumption of fraud arising out of confidential relations may be raised, it necessarily is rebutted when it is shown that the instrument is in exact accord with the grantor's declarations, made both before and after its execution."

Moreover in view of the fact that the defendant originally had owned the remainder interest in said property and in view of the fact that the defendant had so long played the part of a son to the grantor, and in view of the fact that as between him and a 79-years-old sister of the grantor the defendant was the more natural object of her bounty, defendant's good faith is amply shown.

In the Peterson case, supra, deemed important was the fact that the defendant grantees in that case "would see to it that the mother was never left alone in conversation with these two petitioners." Exactly the reverse was true in the present case. On August 19, 1951, when the plaintiff drove from her home in Millersburg to visit the grantor—just five days after the deed was executed—both she and her driver, Mr. Bragg, talked alone with the grantor.

On all the evidence it is concluded that the defendant acted entirely in accord with the grantor's wishes in having the deed prepared, that he was in no way guilty of any bad faith towards the grantor. The circumstances here are similar to and as replete with good faith as those in Hutchens v. Hutchens 91 N. E. 2nd 184. There is absolutely no evidence of any misrepresentation of the grantor, and she was in possession of all the necessary facts to make the transfer to the defendant.

Surely there was no duty on the part of either the grantor or the defendant to make any disclosure to the plaintiff of the grantor's intention to execute or the actual execution of the deed. Such a rule would require a grantor in similar circumstances to notify all next of kin of his intention with references to the disposal of his property. Manifestly undue influence from many quarters would thus be invited and encouraged rather than prevented.

Accordingly plaintiff's claim of undue influence is not substantiated.

Finally to be considered is the claim that the deed is invalid because of the absence or the inadequacy of consideration.

When the rights of creditors are affected the validity of a deed may be challenged if the consideration be not valuable and not sufficient. But it is now widely accepted that consideration is not necessary to validate a conveyance of real property as between the parties and their privies. **Brown v. Whaley, 58 Oh St 654, 665** and 26 C. J. S. Paragraph 16, P. 189. Otherwise the right to acquire and own property would be meaningless and impotent in the absence of the correlative right to freely dispose of that property.

In the light of this worthwhile and fundamental principle, so important to our system of private property, and inasmuch as there is no statutory requirement that there be consideration to validate a deed as between the parties and their privies, it is concluded that the absence of consideration for the present deed does not impair its validity. Since the present controversy involves the parties to the deed and their privies the words reciting the alleged consideration are superfluous and immaterial. Moreover it has recently been held that where a deed recites a money consideration it may be shown to be a voluntary conveyance and where it states love and affection as the consideration a money or other valuable consideration may be shown. McCann v. Glynn Lumber Co. 199 Ga. 669, 34 S. E. 2d 839.

On law and fact the defendant is entitled to judgment.