## McDEVITT, Plaintiff-Appellant, v. MORROW, Defendant-Appellee.

Ohio Appeals, Second District, Franklin County.

No. 4376. Decided March 17, 1950.

J. Paul McNamara, Donald S. McNamara, George L. Breithaupt, Columbus, for plaintiff-appellant.

Robert R. Shaw, Mary Prentice, Columbus, for defendant-appellee.

## OPINION

By HORNBECK, J.

The plaintiff, in his lifetime, instituted his action for the cancellation of a deed signed and executed by him to his daughter, Dorothy McDevitt Morrow, defendant, and praying that she be required to reconvey the property described in the petition to the plaintiff. The action was instituted on March 2, 1949. The plaintiff died April 9, 1949, and the cause was revived in the name of Mae E. McDevitt, his widow and heir at law. Upon trial had, judgment was entered for the defendant and the petition dismissed.

The appeal is on questions of law and fact which require that we determine the issues as though the cause had arisen in this Court.

James A. McDevitt, the original plaintiff, was the father of defendant and four other children, two sons and two daughters. During the lifetime of the first Mrs. McDevitt, mother of the aforementioned children, James A. McDevitt and his wife acquired the real estate, the subject matter of this case, Mrs. McDevitt died on the fifth of March, 1945, at which time the defendant and a sister, Marguerite and her husband, Floyd W. Woodruff, were living at the McDevitt home. Later, defendant married and moved from the home but Marguerite and her husband remained with her father until his marriage to Mae Bowlby on October 25, 1948. Sarah McDevitt, the first wife, left a will disposing of her one half interest in the property involved jointly owned by her and her husband. Before this will was probated all of the children of the McDevitts joined in a quit-claim deed to their father transferring all of their right, title and interest in the property to him. This deed was executed on January 8, 1946. On January 24, 1946, James McDevitt executed the deed, the subject matter of this action, which deed recited a consideration of "one dollar and other good and valuable consideration." The deed to the defendant was recorded by her on December 2, 1948. Plaintiff charged that "defendant procured and induced the plaintiff to execute **and deliver** the deed to the premises and that the plaintiff executed **and delivered** said instrument of conveyance without a knowledge or understanding of the contents of the instrument or its legal effect"; that "at the time said deed was executed and delivered, the defendant was represented by an attorney and the plaintiff was not represented by an attorney." After trial had and before the judgment entry was spread upon the record, the Court permitted the plaintiff to delete from the petition those words which we have emphasized.

The defendant answering, after denying the averments of the petition, alleged that the deed in question was made after the children of the McDevitts had deeded their interest in the premises to their father, that the deed was made to the defendant upon specific authorization of Mr. McDevitt to Mary E. Prentice, an attorney, that he thoroughly understood the purpose of the deed, that its execution was his own voluntary act done with full knowledge of its legal effect, that the plaintiff understood that the deed should be executed and delivered, that it was left in the plaintiff's safety deposit box with his full knowledge and consent from the time of its execution and delivery until the time it was recorded.

At the time that the cause was submitted to the trial judge, there had been no proof, of substance, to establish the aver-

ments of the petition but the evidence did raise a substantial question as to the legal delivery of the deed. Counsel for defendant, many times attempted to restrict the introduction of the evidence to the issues drawn on the pleadings but without success and also moved for finding and judgment in her behalf at the conclusion of plaintiff's case. This motion could well have been sustained. However, the cause comes into this Court upon a stipulation of the parties, that we are to try it upon the pleadings below and the evidence there taken which is in the form of a transcript.

At the outset we observe that it is seldom, if ever, a case has come to our attention wherein each party has done so much to weaken the essentials of proof in his behalf, nor wherein a completely satisfactory resolution of the evidence has been more baffling.

The plaintiff instituted his action and in his petition alleged three times that the deed in question had been executed and delivered. This was clearly an admission against interest, the effect of which was to tend to establish a delivery of the deed. These averments would have been admissible on behalf of the defendant even though they were eventually stricken from the petition. Annotation to Craig v. United Railroads Company of St. Louis (Mo.) 14 A. L. R. 65. Strangely enough the defendant did not proffer in evidence these admissions of the petition. There is, however, left in the petition, which may be considered, the statement, "At the time the said deed was executed and delivered the defendant was represented by an attorney," etc. We are cognizant of the fact that this pleading was prepared by an attorney and that the client may not have fully understood the legal import of the admission of the delivery of the deed. However, it is also to be presumed that the petition was prepared by counsel after full opportunity to elicit the facts.

The defendant upon first impression weakens her case by certain of her testimony, stated and restated, to the effect that she did not undertake to exercise any control over the deed to the exclusion of her father, that she intended him to have access to it, that he had a right to tear the deed up if he wanted to, that the father could have gotten the deed at any time he wanted to and other answers to like effect. It thus becomes necessary to consider all the facts and circumstances preliminary to, attending and succeeding the execution of the deed to reconcile, if possible, the seeming inconsistency in the statements and acts of the parties.

We approach the determinative question here, namely, the

legal delivery of the deed with an appreciation of the controlling principle that,

"To pass title to realty there must not only be a delivery of a deed by the grantor with intent to sever his rights to further control the instrument, but there must also be an acceptance of the deed with expressed or implied intent to take title as therein. conferred." **Mossbarger v. Oswald, 26 Abs 345.**

That,

"the grantor must part with right of control and right of recall of the deed." Goodhue v. Goodhue, 15 O. D. 635.

That,

"the grantor must intend to vest in the grantee the custody of the instrument no less than the estate." **Dukes v. Spangler, 35 Oh St 119.**

It fairly appears from the evidence that the grantor had intended for some time prior to the execution of the deed to the defendant to make such transfer and had talked the matter over on several occasions and at considerable length with several of his children including the defendant, that he had proposed to make the deed to a son and the defendant jointly but that the son would not consent to accept it. It further appears that but a few weeks elapsed between the execution of the quit-claim deed from the children to the father and the execution of the deed in question to the defendant and it is inferable that the effect of the execution of these instruments coexisted in the minds of the parties when the latter deed was made. It appears that the property was to be accepted by the defendant, as between her and her father, charged with the obligation to use the property, or the proceeds therefrom, for the care and support of the father during his lifetime and at his death to divide it equally among his surviving children. Herein is found, in our judgment, the explanation of the statements of the defendant apparently contradictory of the theory of the delivery of the deed. There can be no doubt from her testimony that at all times she felt that the property was charged with the obligation of care and support for her father and to that end it could at any time have been appropriated for that purpose. To her this was ownership in him inasmuch

as she did not intend to disturb his possession and use of the premises unless and until occasion arose according to the terms upon which the deed was made.

It should be noted that the test here is not whether the grantor had the opportunity to and could have taken the deed, destroyed it, or otherwise appropriated it, after its execution or indeed, whether the defendant would have interposed to prevent it but whether or not he had the right under the facts attending so to do.

At the time that the instrument was executed Miss Prentice, an attorney at law, with whom the defendant had been employed and a long time friend of the father and the family, was called to come to the home of the McDevitts. She was familiar, in part at least, with the subject of the family discussions relative to the deeds, had placed the quit-claim deed for record at the request of the father and, according to the defendant, had participated in some of the discussions between the father and his family relative to the warranty deed to the defendant. She had directed the preparation of the deed which was made succeeding the several conversations which we have heretofore mentioned. She took the deed to the home of the father and there were present besides the father and Miss Prentice, the defendant, her sister, Marguerite, and brother-in-law, Mr. Woodruff, who had remained at home upon the request of the father that he act as a witness to the deed. It is testified by Miss Prentice that the subject matter of the deed was fully explained to Mr. McDevitt, that it was duly executed and witnessed and then handed by Mr. McDevitt to the defendant. She does not recall what later was done with the deed. Mr. Woodruff also says that the last time he saw the deed "Dad handed it to Dorothy."

The defendant, on cross-examination, was not definite to the effect that her father handed the deed to her but later, in chief, so stated. It then appears that the deed was turned over to the father who placed it in a drawer in which he kept his personal effects and that later the defendant and her father took the deed to a safe deposit box carried in their joint names, defendant being named as the principal, the father as the deputy, where it was placed and kept until it was recorded. It is thus well established that manual delivery of the deed was made from the grantor to the grantee. The decisive question is the intention of the grantor to have the instrument take effect as a deed then passing title.

It is further developed that the family relationship between the father and the children had been a very close and con-

genial association until about the time of the second marriage when difficulty arose by reason of the courtship and eventually the marriage.

The most logical reason for the formality attending the execution and delivery of the deed is that the father desired to transfer his property to his daughter in accordance with his purpose frequently expressed. Unless this was the intent no satisfactory explanation accounts for the transaction at the home of the father.

During the time that Mr. McDevitt and Mrs. Bowlby were associated and prior to the marriage he wrote to her in which letter he made statements to the effect that he owned and had a right to sell the real estate described in the deed to the defendant. In August, 1948, Mr. McDevitt renewed a loan, secured by the real estate conveyed in the deed, from the Central Ohio First Mortgage Company at which time the abstract was continued; he stated that he owned it and the property was shown to be in his name. When Mr. McDevitt discovered that the deed to his daughter had been recorded he expressed surprise and later instituted the instant action. These acts, all occurring subsequent to the execution and delivery of the deed, do have probative effect as tending to show that the father did not intend to part with title to his property and must be considered together with all the other facts attending the transaction and as to some of these in the light of the changed relation between the father and his family succeeding his second marriage.

It is urged by the plaintiff that because of the confidential relations existing between Mr. McDevitt and the defendant and because it does not clearly appear that there was valuable consideration for the transfer of the property, the act of the defendant in accepting and recording the deed should be scrutinized carefully and she should be required to show that there was no overreaching on her part. **Peterson v. Mitchener, 79 Oh Ap 145.** The good faith of the defendant in the transaction clearly appears in this record and that she was actuated by a purpose to assure that the property be used in accordance with the expressed desires of her father.

The defendant testified that she recorded the deed when she did because of the second marriage, because she and her brothers and sisters were cut off from access to their father and to assure that he would be taken care of by the property. It is probable that but for the marriage the deed would not have been recorded unless and until an emergency arose requiring that it be used to support the father or until his death.

The record of a deed is prima facie evidence of its delivery. **Lessee of Mitchell v. Ryan, 3 Oh St 377; Smith v. Ranck, 37.O. O. 235, 80 N. E. (2d) 631,** which case may be rebutted by proof. There was no time succeeding the delivery of the deed, except the period during which the father had the deed in his home, that he had it in his exclusive possession and its possession by the defendant is consistent with the facts although the father had access to it.

Upon the whole record, we are of opinion that the most reasonable explanation of the transfer wherein the deed was executed and delivered to the defendant is that, at that time, the grantor intended to release control of the deed and to transfer the title to the property described therein to the defendant upon the terms stated by her. No doubt he could have withdrawn the deed from the deposit box not because he had the right to do so but because his daughter, the defendant, would not have interposed to prevent it. Indeed had he destroyed the deed, the daughter could have, notwithstanding, asserted her title because of the completed delivery to her. Dukes v. Spangler, supra; **Scott v. Mofford, et al., 64 Oh Ap 457.** A deed is not rendered inoperative because the grantor is to retain possession of the property during his lifetime. 26 C. J. S. 247. The father's possession of the property, at all times, until his death, was consistent with the terms under which the deed was delivered. Mossbarger, et al., v. Oswald, et al., supra.

There is no doubt that there had been such a change in the relationship of the father toward the defendant and his family by reason of the second marriage as would account, in part at least, for his change in purpose respecting the transfer of the real estate described in the deed.

We cannot find that the plaintiff has sustained proof of the averments of the petition and the judgment accordingly will be for the defendant.

MILLER, PJ, and WISEMAN, J, concur.

### ON MOTION FOR NEW TRIAL

No. 4376. Decided April 14, 1950.

By THE COURT.

Submitted on motion for new trial, which will be overruled.

MILLER, PJ, HORNBECK and WISEMAN, JJ, concur.