ADAMS, APPELLEE, *v.* ADAMS, APPELLANT.*

(No. 8392—Decided March 3, 1958.)

*Mr. Peter J. McCarthy* and *Messrs. Goodman & Goodman,* for appellee.

*Mr. James O. Bradley,* for appellant.

LONG, J. This is an appeal on questions of law and fact in which plaintiff asks for a declaratory judgment with reference

*Motion to certify the record overruled, October 15, 1958.

to certain deeds, a judgment of the court setting aside those deeds, and a holding to the effect that plaintiff has title to such real estate as against any claims of the defendant. By way of cross-petition, defendant prays that plaintiff's claim be held for naught, and that her title be quieted in the real estate.

The property here involved is a two-story family dwelling, which was originally in the name of Bessie Adams, mother of plaintiff. When Bessie Adams died intestate, the property descended one-half to plaintiff and one-half to his father, Harry A. Adams. Plaintiff lived in one of the apartments and his father lived in the other; this arrangement continued after the death of Bessie Adams. Various conveyances of the property, by warranty deed, took place as follows:

On May 26, 1939, plaintiff and his wife conveyed the son's undivided one-half interest to the father, Harry A. Adams; and on July 29, 1939, Harry A. Adams, the father, conveyed his entire interest to his son, the plaintiff. Although executed on July 29, 1939, delivery to the son was not made until September 1939, just about two months before Harry A. Adams married the defendant, Helen M. Adams. By apparent agreement between father and son, the deed from Harry A. Adams to Calvin L. Adams was not to be recorded, and it was not recorded during the lifetime of Harry A. Adams. Helen married Harry in November 1939, and about three and one-half years later, in the spring of 1943, Harry A. Adams conveyed a one-half interest in the property to Helen, and, subsequently, about ten years later, he conveyed the remaning one-half interest to Helen. Helen and Harry lived together as husband and wife for 16 years. After Harry's death, for the first time, Helen learned that Harry had given his son, the plaintiff, a deed to the property, which deed had never been recorded. The deeds which Harry gave to Helen, his second wife, were recorded immediately after delivery of the same; and the plaintiff's deed, although executed in 1939, was not placed on record until a few days after his father's death in 1955.

Section 5301.25, Revised Code, providing for the recording of deeds, with provision for defeasance as to bona fide purchasers, has no application under the facts of this case; this is admitted by the parties. However, the court is concerned with

the intention of the parties, when the father, Harry A. Adams, gave his son the deed in 1939. Not only must there be a manual delivery of the deed, but there must be an unqualified present intention to give up the right of control of the deed, as well as an acceptance of the instrument within the expressed or implied intent to take title immediately as the same is set forth in the deed. Let us examine the record. There is no dispute that the son paid rent to his father after he received his deed; that the father paid the taxes, insurance and kept the place in repair. In 1942, when the son ceased to live in one of the apartments, although he had an ostensible warranty deed, he sent the keys to the apartment to his father with this note: "Pop—here are the keys for house—garage. Bud." When interrogated by his own lawyer as to what his father said when he gave him the deed, this was the reply: "He called us down and he said. 'Here is the deed to the house, son. Now, I will live in this house as long as I am here. *After I am gone, it is yours.*'" (Emphasis added.)

On cross-examination, this testimony was given by the son:

"Q. Now prior to your father's death, you knew that he had conveyed the property to his wife, didn't you? A. That's right.

"Q. And at that time, you did nothing with your deed that you had from '39, did you? A. That's right. *I just done what he told me.*" (Emphasis added.)

As a further indication of the understanding of the intention of the father, he subsequently deeded the property to his second wife, the defendant, and had the deeds recorded immediately. Why would he have done this if he had already surrendered dominion of the deed and the estate therein described? What intention of the grantor can be gathered from these facts? Did the father part with dominion over the deed with intention to pass title? There must be intent to vest in the grantee, not only custody of the instrument, but the estate described in the instrument. The deed must be delivered with the intention of having it take effect at once, before it can transfer title. The son knew his father's intention and was carrying out his intention, as follows: "I just done what he told me." See 17 Ohio Jurisprudence (2d), 155, Section 55.

4

In the case of *Kniebbe* v. *Wade,* 161 Ohio St., 294, 118 N. E. (2d), 833, we have a case almost in point. A husband and wife made reciprocal deeds to one another of real estate of which they were tenants in common; they had an understanding that in the case of the death of either, the survivor would take the property by deed of the one first dying. Both deeds were unrecorded and were kept in a box at home, to which both had access. The Supreme Court, in the second paragraph of the syllabus, held: "In such case, the mere fact that the wife has possession of the husband's unrecorded deeds after his death does not constitute delivery in order to pass title as against a legal heir, *where there was no intention to make such deeds presently operative.*" (Emphasis ours.)

See, also, *Lessee of Mitchell* v. *Ryan,* 3 Ohio St., 377. In *McDevitt* v. *Morrow,* 57 Ohio Law Abs., 281, 94 N. E. (2d), 2, the court held, in the second paragraph of the headnotes: "To pass title to realty there must not only be a delivery of a deed by grantor with the intent to convey his interest, but also an acceptance of the deed by grantee intending to take title as therein conferred."

There seems to be no question that the deciding factor in such cases depends upon the *intention* of the grantor. In the case at bar, we feel that the grantor's intention was clear that he never intended to pass a present title to his son; it is equally clear that the son understood his father's intention; the son "done what he told me." The intention of the father is not only ascertainable from what occurred at the time he gave his son the deed, but from the conduct of the father and son toward the property and the subsequent deeds of the property to the defendant by her husband, which were immediately recorded by the husband.

It would be manifestly unjust under the circumstances of this case, when the intention of the grantor is so clear, to deprive the widow, who was a wife for 16 years, of her rights in this real estate. It seems to this court, that after 4 years of marriage, the husband properly decided that his wife was entitled to at least one-half of the real estate as against the son, and that 10 years thereafter, he had the right under his original intention to give all the real estate to a faithful wife. We are of

the opinion that the deed to the plaintiff would have been in fraud of the defendant's marital rights, but the execution and recording of these deeds corrected that fraud.

The judgment is accordingly, quieting defendant's title in the real estate.

*Judgment accordingly.*

HILDEBRANT, P. J., and MATTHEWS, J., concur.