805 F.2d 1036
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re Mary Anne POTTS, aka Mary Anne Turk, Debtor.
The MIDWEST BANK & TRUST COMPANY, Plaintiff-Appellee,
v.
Mary Anne POTTS, et al., Defendants,
Velma E. ALEXANDER; Mervin L. Alexander; Dorothy
Alexander, Defendants- Appellants.
 No. 85-3764.
 United States Court of Appeals, Sixth Circuit.
 Oct. 22, 1986.
 
 Before KENNEDY and MARTIN, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Velma, Mervin and Dorothy Alexander appeal a judgment of the district court affirming a bankruptcy court authorization of a foreclosure proceeding in this family dispute over title to certain real estate in rural Ohio. The bankruptcy court heard the case on remand from this Court where we had found that the bankruptcy judge had improperly excluded certain parol evidence. For the reasons stated below, we affirm the judgment of the district court.
 
 
 2
 In October of 1972, Velma Alexander executed and hand delivered a deed to her adopted daughter, Mary Anne Potts. This warranty deed covered a 40-acre farm in Hardin County, Ohio and by its terms was a present conveyance of absolute title to Mary Ann Potts. The deed was never recorded by Potts, and Velma Alexander remained in possession of the land until 1976. During this time Potts and her husband Joseph Turk executed a mortgage covering this property and others, in favor of Midwest Bank and Trust Company, to secure a loan of $189,000.00. Turk and Potts subsequently defaulted on the loan and on May 5, 1976, Midwest Bank obtained a judgment lien against Potts and Turk for $181,208.97. Three weeks after this lien was obtained, Velma Alexander executed and delivered a deed for the same property to her son and daughter-in-law, Mervin and Dorothy Alexander. The deed was recorded and the Alexanders took possession of the farm, paying taxes and collecting rent. In September of 1984, Velma Alexander died.
 
 
 3
 Though the Court of Common Pleas found in favor of the Alexanders, the action was removed to the bankruptcy court which disagreed. At the first trial in the bankruptcy court, the Alexanders sought to introduce parol evidence on two points. First, they attempted to introduce testimony by Velma Alexander and by Potts showing that at the time Potts received the deed, it was agreed that title would not pass and the deed would not be recorded until Velma's death. Second, they sought to introduce testimony by Potts that at the time she received the loan from Midwest Bank, she told them that she did not have title to the farm. The bankruptcy court excluded the testimony, holding that the principle of estoppel by deed barred Velma and Potts from denying the effectiveness of the deed as a present conveyance.
 
 
 4
 On appeal we held that the parol evidence should have been admitted for two purposes. First, the evidence that title was not to pass until Velma's death should have been admitted to show that delivery was not complete when Potts received the deed. Second, the testimony of Potts, that she told Midwest Bank she did not have title to the property, should have been admitted to show the bank was not misled to its detriment. Unless Midwest Bank was misled, estoppel would not apply. Thus, at the second trial in bankruptcy court, this evidence was admitted.
 
 
 5
 The testimony at both hearings was conflicting. Both Potts and Velma (by prior recorded testimony) testified that Velma had placed restrictions on the deed at the time of transfer. Velma, however, stated that she had no knowledge of the bank's lien whereas Potts testified that she telephoned Velma immediately after Midwest Bank obtained it. As to what Potts told the bank, she testified that she had told them about the restrictions her mother had placed on the deed, while both her former husband, Turk, and Midwest Bank's vice-president Ralph Schlag testified that Potts had represented herself as the holder of a free and clear title to the farm. Other evidence was introduced supporting Schlag's position. Schlag conceded that no title search was undertaken.
 
 
 6
 In the bankruptcy proceeding and here, the Alexanders argue that Potts had no title to the farm because a valid gift requires delivery and intent, which they contend were absent. As to the question of intent, the bankruptcy court found and the record supports, that when the evidence is construed most favorably to the Alexanders, Velma intended to make a present gift of a future interest, reserving a life estate for herself. It held that the issuance of a second deed was insufficient to revoke the previous gift, and that upon Velma's death full title vested in Potts. As for the delivery, the court found that once Velma placed the deed in Potts' possession, Potts had the ability to represent to anyone that she held record title, making Midwest Bank's reliance reasonable. Thus, the court held that Velma was estopped to deny delivery and passage of title to Potts. The district court affirmed that finding, noting the fact that Velma remained on the property after the transfer was of no significance, citing McDevitt v. Morrow, 57 Ohio L.Abs. 281, 288 (Franklin App.1950). The result of these decisions is that Mary Ann Potts had clear title to the farm and Midwest Bank was allowed to proceed with foreclosure on the property.
 
 
 7
 On appeal the Alexanders raise three issues and argue that the weight of the evidence was against the district court's decision on all three. First they argue that the manual transfer of the deed was not accompanied by an intent to presently, immediately and unconditionally convey title, and the bankruptcy court's decision was therefore in error. Second they argue that when a donor retains possession of land that no executed gift is shown. Third they argue that the bankruptcy court failed to recognize that "one who claims through or under an unrecorded deed is bound to take notice of the recitals therein." This would mean the bank would not be entitled to rely and estoppel by deed would be inapplicable.
 
 
 8
 Here, as in the bankruptcy review in district court, (applying Rule 8013 of the Rules of Bankruptcy Procedure), we are governed by the clearly erroneous standard of Civil Rule 52. As noted in Johnson v. United States, 600 F.2d 1218, 1222 (6th Cir.1979), "[f]indings of fact will be deemed clearly erroneous only where it is against the clear weight of the evidence or when upon review of the evidence, the appellate court 'is left with definite and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U.S. 364, 395 (1958)." Here we see no error. Additionally, as Midwest points out in its brief, the Alexanders must prevail on each issue in order to reverse. Even if they were able to establish that the trial court erred in finding an effective conveyance of the property, they could not prevail absent a finding that the application of the estoppel by deed doctrine was in error.
 
 
 9
 On the question of intent, the bankruptcy court which heard the evidence, specifically found that intent was no longer an issue. Velma delivered a valid, unconditional deed to Potts which remained in her possession at all times. Though some evidence indicated there was an oral reservation of a life estate in the use of the property, there was no evidence to show that Velma intended to retain title until her death. Potts' conduct indicated both to her husband and to Midwest Bank that she owned the property outright. Intent in this case is a factual question and we see nothing to indicate the finding of the bankruptcy court was clearly erroneous.
 
 
 10
 The second alleged error is similar. The Alexanders argue that Velma's continuing exercise of possession over the land demonstrates that no valid delivery was ever made. For this they rely on Adams v. Adams, 107 Ohio App. 1 (1958), and Kniebbe v. Wade, 161 Ohio St. 294 (1954). In both cases the court found that the grantor of the deed in fact intended it to be testamentary in nature, therefore finding the inter vivos gift ineffective. However, we find that both cases may be distinguished on their facts. In Adams, a father had conveyed a deed to property to his son stating that after he died, the property would belong to the son. The son did not record the deed. The father then remarried and conveyed the same property to his wife with whom he lived for 16 years. The son knew of this conveyance and did nothing. The court held that upon the death of the father, the wife should have title to the property and that to find otherwise would be manifestly unjust.
 
 
 11
 Here the injustice would result were we to find the first conveyance invalid. The evidence of intent in Adams was entirely on one side and not disputed. The son did not hold himself out as the record owner of the property because he understood that he was not intended to be the owner. Potts on the other hand represented herself to the bank as the holder of clear title to the property. Though she testified otherwise, her testimony is disputed, and the fraud which would result were the Midwest Bank not allowed to foreclose persuades us of the validity of the transfer. In addition, here, there was evidence to show that the Alexanders knew of the previous conveyance. In Kniebbe v. Wade, a husband and wife simultaneously executed mutual deeds of property they owned as tenants in common which were to take effect upon the death of the other. These deeds were then placed in a box in their home to which both had access. Because he retained access, the court found that the deeds were not delivered by the husband to his wife. Rather it found that he reserved the right to control or reclaim them. In Kniebbe there was no question that the deeds were meant to be testamentary in nature, whereas here, there is evidence to the contrary. In addition, Velma had no control over the deed to the property despite the fact that she remained in possession of the land. There is a presumption of delivery arising from the possession of a deed by the named grantee. Kniebbe v. Wade, 161 Ohio 294, 297. Velma did not retain the right of recall and control over the instrument, and "a deed is not rendered inoperative because the grantor is to retain possession of the property during his lifetime." McDevitt v. Morrow, 57 Ohio L.Abs. 281 (1950). In McDevitt, an earlier gift was considered complete, despite a finding that the grantor father still had the ability to physically revoke the deed.
 
 
 12
 As to the third error on the estoppel by deed issue, we believe that the facts are clear. While it would undoubtedly have been good practice for Midwest Bank to have searched the title and to have required Potts to record it, the fact remains that at the time the mortgage was executed Mary Ann Potts had in her possession a deed purporting to convey to her all right, title and interest in the property. Appellants' argument that Midwest Bank was not misled to its detriment is without merit. The Bank justifiably relied on the terms of the deed based on what they were told by Potts. The deed contained no language regarding restrictions. At the time of the mortgage's execution, Velma Alexander had not conveyed the property to anyone but Mary Ann Potts, and this was the representation Midwest Bank relied on. As one Ohio legal writer has said, "[o]ne who places another in the position to misrepresent the status of his title should not be allowed to change his position to the detriment of one who has been thereby defrauded." 42 O.Jur.3d Estoppel and Waiver Sec. 7 (1983).
 
 
 13
 Velma Alexander, and those who would take through her have failed to persuade us that the theory of estoppel by deed should not apply in this case. Midwest Bank appears to have had no knowledge of restrictions on the title and had no reason to have been placed on inquiry notice. Velma Alexander on the other hand appears to have made the second conveyance of the property in question only after learning of Midwest Bank's judgment lien. In addition, her son and daughter in law knew of the earlier deed to Potts.
 
 
 14
 The judgment of the district court is affirmed.